IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JOINT HEIRS FELLOWSHIP           §
CHURCH, HOUSTON'S FIRST          §
CHURCH OF GOD, and FAITH         §
OUTREACH INTERNATIONAL CENTER,   §
                                 §
            Plaintiffs,          §
                                 §
v.                               §      CIVIL ACTION NO. H-14-0125
                                 §
NATALIA ASHLEY, in her           §
official capacity as Interim     §
Executive Director of the        §
Texas Ethics Commission,         §
et al.,                          §
                                 §
            Defendants.          §

## MEMORANDUM OPINION AND ORDER

Plaintiffs Joint Heirs Fellowship Church, Houston's First Church of God, and Faith Outreach International Center (collectively, "Plaintiffs") brought this action against the Executive Director and members of the Texas Ethics Commission, in their official capacities (collectively, "Defendants") challenging certain provisions of the Texas Election Code. Pending before the court are Plaintiffs' Motion for Temporary Restraining Order and Expedited Preliminary Injunctive Relief ("Motion for Preliminary Injunction") (Docket Entry No. 2), Defendants' Motion for Summary Judgment (Docket Entry No. 52), and Plaintiffs' Motion for Summary Judgment and Memorandum in Support ("Plaintiffs' Motion for Summary Judgment") (Docket Entry No. 53). For the reasons explained below, Plaintiffs' Motion for Summary Judgment will be denied, Defendants'

Motion for Summary Judgment will be granted in part, Plaintiffs'
Motion for Preliminary Injunction will be denied, and this case
will be dismissed.

## I.  Background

Plaintiffs are incorporated churches that wish to become
involved in efforts to recall certain elected officials.[1]
Plaintiffs Joint Heirs Fellowship Church and Houston's First Church
of God are located in Houston, Texas, and plaintiff Faith Outreach
International Center is located in San Antonio, Texas.[2]

When Plaintiffs filed their Motion for Preliminary Injunction,
there was "a recall effort under way in San Antonio, Texas, to
recall Mayor Julián Castro and council members Diego Bernal,
Rebecca Viagran, Rey Saldaña, Shirley Gonzales, Ray Lopez, Cris
Medina and Ron Nirenberg."[3]  According to Plaintiffs, the "recall
effort [was] premised on a proposed ordinance that these council
persons and Mayor proposed and supported that is contrary to

_____

[1]Plaintiffs' Second Amended Complaint and Application for
Preliminary Injunction, Permanent Injunction, and Declaratory
Judgment ("Second Amended Complaint"), Docket Entry No. 36, p. 2
¶¶ 1.1-1.3, p. 5 ¶ 3.1, p. 10 ¶ 4.6; Defendants' Motion for Summary
Judgment, Docket Entry No. 52, p. 9.  Page citations are to the
pagination imprinted by the federal court's electronic filing
system at the top and right of the document.

[2]Second Amended Complaint, Docket Entry No. 36, p. 2
¶¶ 1.1-1.3; Defendants' Motion for Summary Judgment, Docket Entry
No. 52, p. 9.

[3]Motion for Preliminary Injunction, Docket Entry No. 2, p. 2
¶ 1; see also Second Amended Complaint, Docket Entry No. 36, p. 11
¶ 4.10; Affidavit of Pastor Charles Flowers in Support of Motion
for Preliminary Injunction, attached to Motion for Preliminary
Injunction, Docket Entry No. 2-2, p. 2 ¶ 4.

religious freedom and freedom of speech."[4] Plaintiffs desired "to immediately initiate their involvement in support of the San Antonio efforts."[5] Plaintiffs also contend that "some Houston city officials have supported policies that Plaintiffs feel are contrary to moral values and religious freedom," and that "[p]laintiffs Joint Heirs Fellowship Church and Houston's First Church of God would like to engage in immediate involvement in support of a recall election regarding one or more such officials."[6]

Plaintiffs allege that under certain provisions of the Texas Election Code they "cannot be involved in supporting the recall efforts through raising money, donating money, coordinating people's activities, promoting the recall effort on church websites, allowing petitions to be signed and distributed on church grounds, speech supporting the effort, or in any way public[ly] supporting recall efforts."[7] Defendants are charged with enforcing the provisions of the Texas Election Code.[8]

---

[4]Motion for Preliminary Injunction, Docket Entry No. 2, p. 2 ¶ 2; see also Second Amended Complaint, Docket Entry No. 36, p. 10 ¶ 4.6.

[5]Motion for Preliminary Injunction, Docket Entry No. 2, pp. 2-3 ¶ 5; see also Second Amended Complaint, Docket Entry No. 36, p. 10 ¶ 4.6, p. 11 ¶ 4.10.

[6]Motion for Preliminary Injunction, Docket Entry No. 2, p. 2 ¶ 3.

[7]Id. ¶ 4; see also Second Amended Complaint, Docket Entry No. 36, p. 10 ¶¶ 4.6-4.7.

[8]Second Amended Complaint, Docket Entry No. 36, p. 3 ¶ 1.13; Defendants' Answer to Plaintiffs' Second Amended Complaint ("Answer"), Docket Entry No. 44, p. 3 ¶ 1.13; see also Tex. Gov't Code Ann. § 571.061(a)(3) (West 2012).

## A.   Plaintiffs' Intended Conduct

Plaintiffs allege that they intend to engage in the following conduct:

> a.  Circulating recall petitions,
>
> b.  Submitting recall petitions,
>
> c.  Obtaining signatures and support for recall petitions or in opposition to recall petitions,
>
> d.  Promoting recall efforts in communications to the public, including but not limited to the posting of information on the Plaintiffs' websites, church communications, bulletins, in the media, in interviews, and in other communications;
>
> e.  Encouraging others to circulate, support, or oppose recall petitions,
>
> f.  Utilizing or providing facilities, equipment, supplies, or personnel to assist in the signing and circulation of recall petitions and in connection with recall petitions,
>
> g.  Notifying the public that recall petitions are available for signing at their church[es] or other locations,
>
> h.  Raising and spending funds in support of recall petitions or in opposition to recall petitions,
>
> i.  Sending out emails and other communications to church members and to the public encouraging them to get involved in matters regarding recall petitions, including, without limitation, circulating and signing recall petitions,
>
> j.  Speaking from the pulpit and other venues in support of or in opposition to recall efforts,
>
> k.  Coordinate with the two other Plaintiff churches in this matter, and with other individuals and organizations, for the principal purpose of circulating and submitting recall petitions and otherwise advocating recalls, including through the raising and spending of funds, and the other actions mentioned above.

-4-

l.  [Each Plaintiff] intends to contribute funds from its regular budget to support the recall or other measures-only efforts.  Also, when raising funds for a recall effort or a measures-only effort, they intend to inform potential contributors that the funds will be used in connection with the recall effort or measures-only effort.

m.  Doing any of the above activities in connection with a measures-only issue in addition to recall petition matters.[9]

## B.   Procedural History

Plaintiffs filed their Original Complaint and Motion for Preliminary Injunction on January 17, 2014.[10]  On January 23, 2014,

---

[9]Second Amended Complaint, Docket Entry No. 36, pp. 11-13 ¶ 5.1; id. at 13-16 ¶¶ 5.2-5.3; see also Plaintiff's Joint Heirs Fellowship Church's Responses to Defendants' First Set of Interrogatories ("Joint Heirs' Interrogatory Responses"), attached to Plaintiffs' Motion for Summary Judgment, Docket Entry No. 53-19, pp. 2-3; Plaintiff's Houston's First Church of God's Responses to Defendants' First Set of Interrogatories ("Houston's First Interrogatory Responses"), attached to Plaintiffs' Motion for Summary Judgment, Docket Entry No. 53-20, pp. 2-3; Plaintiff's Faith Outreach International Center's Responses to Defendants' First Set of Interrogatories ("Faith Outreach International's Interrogatory Responses"), attached to Plaintiffs' Motion for Summary Judgment, Docket Entry No. 53-21, pp. 2-3; Affidavit of Pastor Don Bergstrom in Support of Motion for Preliminary Injunction, attached to Motion for Preliminary Injunction, Docket Entry No. 2-1, pp. 2-3 ¶ 5; Affidavit of Pastor Charles Flowers in Support of Motion for Preliminary Injunction, attached to Motion for Preliminary Injunction, Docket Entry No. 2-2, pp. 2-3 ¶ 7; Affidavit of Pastor John McCrutcheon in Support of Motion for Preliminary Injunction, attached to Motion for Preliminary Injunction, Docket Entry No. 2-3, pp. 2-3 ¶ 5.

[10]Plaintiffs' Original Complaint and Application for Temporary Restraining Order, Preliminary Injunction, Permanent Injunction, and Declaratory Judgment ("Original Complaint"), Docket Entry No. 1; Motion for Preliminary Injunction, Docket Entry No. 2; see also Memorandum in Support of Motion for Temporary Restraining Order and Preliminary Injunctive Relief, Docket Entry No. 3.

the court held a scheduling conference "to discuss an expedited schedule for the filing of motions and briefs" related to Plaintiffs' Motion for Preliminary Injunction.[11]   A preliminary injunction hearing was scheduled for February 5, 2014.[12]  Defendants filed a response to Plaintiffs' Motion for Preliminary Injunction on January 29, 2014.[13]  Plaintiffs filed a reply on February 3, 2014.[14]

On February 4, 2014, Plaintiffs filed their proposed findings of fact and conclusions of law related to the preliminary injunction hearing.[15]  The court held the preliminary injunction hearing on February 5, 2014, and ordered the parties to submit a proposed schedule for the submission of supplemental briefing.[16] The court urged the parties to confer and attempt to stipulate to

---

[11]Order, Docket Entry No. 4, p. 1; Hearing Minutes and Order, Docket Entry No. 5.

[12]Hearing Minutes and Order, Docket Entry No. 5.

[13]Defendants' Response in Opposition to Motion for Preliminary Injunction ("Defendants' Response in Opposition"), Docket Entry No. 7.

[14]Plaintiffs' First Amended Reply in Support of Motion for Preliminary Injunctive Relief ("Plaintiffs' First Amended Reply"), attached to Plaintiffs' Unopposed Motion for Leave to File Plaintiffs' First Amended Reply in Support of Motion for Preliminary Injunctive Relief ("Plaintiffs' Motion for Leave to File Amended Reply"), Docket Entry No. 9-1.

[15]Plaintiffs' Proposed Findings of Fact and Conclusions of Law, Docket Entry No. 10.

[16]Hearing Minutes and Order, Docket Entry No. 16; see also Transcript of Injunction Hearing Before The Honorable Sim Lake ("Transcript of Injunction Hearing"), Docket Entry No. 26; Joint Status Report and Proposed Scheduling Order, Docket Entry No. 18, p. 5.

conduct that they agree does not violate the Texas Election Code.[17]
On February 7, 2014, the parties filed a Joint Status Report and
Proposed Scheduling Order.[18]  Plaintiffs filed their First Amended
Complaint the same day.[19]  On February 10, 2014, the court entered
a scheduling order on supplemental briefing.[20]

On February 19, 2014, Defendants filed their proposed findings
of fact and conclusions of law, and their supplemental briefing on
Plaintiffs' Motion for Preliminary Injunction.[21]  On February 21,
2014, Defendants filed a motion to dismiss.[22]  On March 3, 2014,
Plaintiffs filed their supplemental briefing on their Motion for
Preliminary Injunction.[23]  The parties subsequently indicated that
they could not agree on a proposed order detailing specific conduct
that does not violate the Texas Election Code.[24]

---

[17]Hearing Minutes and Order, Docket Entry No. 16; see also
Transcript of Injunction Hearing, Docket Entry No. 26.

[18]Joint Status Report and Proposed Scheduling Order, Docket
Entry No. 18.

[19]Plaintiffs' First Amended Complaint and Application for
Preliminary Injunction, Permanent Injunction, and Declaratory
Judgment ("First Amended Complaint"), Docket Entry No. 17.

[20]Order, Docket Entry No. 19.

[21]Defendants' Proposed Findings of Fact and Conclusions of Law
on Plaintiffs' Motion for Preliminary Injunction, Docket Entry
No. 24; Defendants' Supplemental Brief in Opposition to Motion for
Preliminary Injunction, Docket Entry No. 23.

[22]Defendants' Motion to Dismiss, Docket Entry No. 25.

[23]Plaintiffs' Supplemental Reply Brief, Docket Entry No. 29.

[24]See Plaintiffs' Supplemental Status Report as to Progress on
Agreed  Partial  Declaratory  Judgment,  Docket  Entry  No.  30;
(continued...)

On March 18, 2014, Plaintiffs filed their Second Amended Complaint.[25]   On March 21, 2014, Plaintiffs filed a response to Defendants' Motion to Dismiss.[26]  On April 2, 2014, Defendants filed an answer to Plaintiffs' Second Amended Complaint.[27]

On June 13, 2014, the parties submitted the pending motions for summary judgment.[28]  On July 3, 2014, the parties filed their responses.[29]  On July 18, 2014, the parties filed their replies.[30]

## II.  **Standard of Review**

Rule 56 of the Federal Rules of Civil Procedure mandates summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party

---

[24](...continued)
Defendants' Response to Plaintiffs' Supplemental Status Report, Docket Entry No. 31; see also Hearing Minutes and Order, Docket Entry No. 16; Joint Status Report and Proposed Scheduling Order, Docket Entry No. 18, pp. 1-4.

[25]Second Amended Complaint, Docket Entry No. 36.

[26]Plaintiffs' Response to Motion to Dismiss, Docket Entry No. 40.

[27]Answer, Docket Entry No. 44.

[28]Defendants' Motion for Summary Judgment, Docket Entry No. 52; Plaintiffs' Motion for Summary Judgment, Docket Entry No. 53.

[29]Defendants' Response in Opposition to Plaintiffs' Motion for Summary Judgment ("Defendants' Response"), Docket Entry No. 58; Plaintiffs' Response to Defendants' Motion for Summary Judgment ("Plaintiffs' Response"), Docket Entry No. 59.

[30]Defendants' Reply in Support of Motion for Summary Judgment ("Defendants' Reply"), Docket Entry No. 60; Plaintiffs' Reply in Support of Motion for Summary Judgment ("Plaintiffs' Reply"), Docket Entry No. 61.

moving for summary judgment "bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." <u>Lincoln Gen. Ins. Co. v. Reyna</u>, 401 F.3d 347, 349 (5th Cir. 2005).  When the nonmoving party would bear the ultimate burden of proof at trial, the moving party may satisfy its summary judgment burden by "'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." <u>Celotex Corp. v. Catrett</u>, 106 S. Ct. 2548, 2554 (1986).  Rule 56 does not require such a movant to negate the elements of the nonmovant's case. <u>Boudreaux v. Swift Transp. Co.</u>, 402 F.3d 536, 540 (5th Cir. 2005). Where the moving party would bear the burden of proof at trial, it must present evidence that would require "a directed verdict if the evidence went uncontroverted at trial." <u>Int'l Shortstop, Inc. v. Rally's, Inc.</u>, 939 F.2d 1257, 1264-65 (5th Cir. 1991).

Once the movant has carried this burden the nonmovant must show that material facts exist over which there is a genuine issue for trial. <u>Reyna</u>, 401 F.3d at 349 (citing <u>Celotex</u>, 106 S. Ct. at 2553-54).  The parties may support the existence or nonexistence of a genuine fact issue by either (1) citing to particular parts of the record, including depositions, documents, electronically stored information, affidavits or declarations, admissions, and interrogatory answers, or (2) showing that the materials cited do not establish the absence or presence of a genuine dispute or that an adverse party cannot produce admissible evidence to support the

fact.  Fed. R. Civ. P. 56(c)(1)(A)-(B).  In reviewing this evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  Reeves v. Sanderson Plumbing Prods., Inc., 120 S. Ct. 2097, 2110 (2000).

### III.  Article III Standing

"Article III of the Constitution limits federal 'Judicial Power,' that is, federal-court jurisdiction, to 'Cases' and 'Controversies.'"  U.S. Parole Comm'n v. Geraghty, 100 S. Ct. 1202, 1208 (1980).  "[T]he requirement that a claimant have standing is an essential and unchanging part of the case-or-controversy requirement of Article III."  Nat'l Fed'n of the Blind of Texas, Inc. v. Abbott, 647 F.3d 202, 208 (5th Cir. 2011) (quoting Davis v. FEC, 128 S. Ct. 2759, 2768 (2008)) (internal quotation marks omitted).  "To qualify for standing, a claimant must present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged behavior; and likely to be redressed by a favorable ruling."  Id. (citing Lujan v. Defenders of Wildlife, 112 S. Ct. 2130, 2136 (1992)).  "To engage in a pre-enforcement review of a statute, as is the case here, a plaintiff must show an 'intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute, and . . . a credible threat of prosecution thereunder.'"  Hoyt v. City of El Paso, Tex., 878 F. Supp. 2d 721, 731 (W.D. Tex. 2012) (quoting

-10-

Babbitt v. United Farm Workers Nat'l Union, 99 S. Ct. 2301, 2309 (1979)).  "The party invoking federal jurisdiction bears the burden of establishing these elements."  Lujan, 112 S. Ct. at 2136.

"When the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he 'should not be required to await and undergo a criminal prosecution as the sole means of seeking relief.'"  Babbitt, 99 S. Ct. at 2309 (quoting Doe v. Bolton, 93 S. Ct. 739, 745 (1973)).  "But 'persons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs.'"  Id. (quoting Younger v. Harris, 91 S. Ct. 746, 749 (1971)); see also Hoyt, 878 F. Supp. 2d at 730 ("An injury for standing purposes must be (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." (citing Lujan, 112 S. Ct. at 2136)). "In determining whether a threat is credible or speculative, the Fifth Circuit 'look[s] to the practical likelihood that a controversy will become real.'"  Hoyt, 878 F. Supp. 2d at 731 (quoting Shields v. Norton, 289 F.3d 832, 835 (5th Cir. 2002)). "In all cases, however, a plaintiff must intend to engage in statutorily proscribed activity."  Id.  "Specifically, plaintiffs must demonstrate a serious[] interest[] in acting contrary to a statute."  Nat'l Fed'n of the Blind, 647 F.3d at 209 (quoting Miss. State Democratic Party v. Barbour, 529 F.3d 538, 545 (5th Cir.

2008) (internal quotation marks omitted)).  Because Defendants do
not contest that Plaintiffs' proposed conduct is affected by a
constitutional interest, the court will look to whether such
conduct is proscribed by statute and whether there is a credible
threat of prosecution.  Cf. Hoyt, 878 F. Supp. 2d at 733-34
(acknowledging that "[i]t is well-established that '[p]etition
circulation . . . is 'core political speech[]'" for which "First
Amendment protection . . . is 'at i[t]s zenith'" and assuming
without deciding that such activity is affected with a
constitutional interest (quoting Buckley v. Am. Constitutional Law
Found., Inc., 119 S. Ct. 636, 639-40 (1999))).

## IV.   Analysis

Plaintiffs challenge the constitutionality of eight provisions
of the Texas Election Code:   (1) § 253.094(b), (2) § 253.096,
(3)   §   253.094(a),   (4)   §   251.001(12),   (5)   §   252.001,
(6) § 253.031(b), (7) § 251.001(2), and (8)  § 251.001(6).[31]  With
respect to each of the eight provisions, the court will first
address whether Plaintiffs have met their burden to establish
standing to challenge the provision.  The court will then address
the merits of those claims for which Plaintiffs have established
standing.

Plaintiffs' Second Amended Complaint raises both facial and
as-applied challenges.   "[F]acial and as-applied challenges have

―――――――――――――――――

[31]Second Amended Complaint, Docket Entry No. 36, pp. 36-37.

different substantive requirements." <u>Catholic Leadership Coal. of Texas v. Reisman</u>, No. 13-50582, 2014 WL 3930139, at *12 (5th Cir. Aug. 12, 2014) (citing <u>Doe v. Reed</u>, 130 S. Ct. 2811, 2817 (2010)). "[T]o categorize a challenge as facial or as-applied [the court] look[s] to see whether the 'claim and the relief that would follow . . . reach beyond the particular circumstances of the[ ] plaintiffs.'" <u>Id.</u> (quoting <u>Reed</u>, 130 S. Ct. at 2817). If so, then the claim must "'satisfy [the] standards for a facial challenge to the extent of that reach.'" <u>Id.</u> (quoting <u>Reed</u>, 130 S. Ct. at 2817).

Plaintiffs have two ways to prevail on a facial challenge. <u>Id.</u>; <u>see also</u> <u>United States v. Stevens</u>, 130 S. Ct. 1577, 1587 (2010). "First, Plaintiffs can 'establish that no set of circumstances exists under which [the law] would be valid or that the statute lacks any plainly legitimate sweep.'" <u>Catholic Leadership</u>, 2014 WL 3930139, at *12 (quoting <u>Stevens</u>, 130 S. Ct. at 1587). "Second, Plaintiffs may also invalidate a statute as overbroad if they demonstrate that 'a substantial number of [the law's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" <u>Id.</u> (quoting <u>Stevens</u>, 130 S. Ct. at 1587).

**A.   Plaintiffs' Challenge to § 253.094(b)**

Plaintiffs argue that § 253.094(b) "is a categorical ban on corporate contributions to recall matters and is still the law of

Texas."[32]   Defendants argue that Plaintiffs lack standing to challenge § 253.094(b) because they have failed to "plead any specific facts to demonstrate that the conduct in which they wish to engage will constitute a 'political contribution' that is actually barred by Defendants' enforcement of § 253.094(a) or (b)," and, furthermore, Plaintiffs have failed to establish a credible threat of prosecution by the Texas Ethics Commission.[33]

1. <u>Plaintiffs' Standing to Challenge § 253.094(b)</u>

Section 253.094(b) states that "[a] corporation or labor organization may not make a political contribution in connection with a recall election, including the circulation and submission of a petition to call an election."  Tex. Elec. Code Ann. § 253.094(b) (West Supp. 2014).  Defendants point out that § 253.094(b) only prohibits the circulation and submission of a petition to call an election when such activity constitutes a "political contribution."[34]  See <u>Hoyt</u>, 878 F. Supp. 2d at 734 ("[T]he Texas legislature intended to prohibit only corporate political <u>contributions</u>, and not other types of campaign finance activity.").

"The Texas Election Code distinguishes political contributions from political expenditures."  <u>Hoyt</u>, 878 F. Supp. 2d at 735; <u>see</u>

_____

[32]Plaintiffs' Motion for Summary Judgment, Docket Entry No. 53, p. 19.

[33]Defendants' Motion for Summary Judgment, Docket Entry No. 52, p. 26.

[34]<u>Id.</u> at 12.

-14-

also <u>Catholic Leadership</u>, 2014 WL 3930139, at *2 ("Texas . . . has two broad categories of political spending: contributions and expenditures."). Relevant to the facts of this case, a "political contribution" is a "direct or indirect transfer of money, goods, services, or any other thing of value," "including the circulation and submission of a petition to call an election," to a "political committee that is offered or given with the intent that it be used . . . on a measure." Tex. Elec. Code Ann. §§ 251.001(2), (3), (5) (West 2012), § 253.094(b) (West Supp. 2014);[35] <u>see also</u> <u>Hoyt</u>, 878 F. Supp. 2d at 734-35. A "political expenditure," on the other hand, is "payment of money or any other thing of value" "made by any person . . . on a measure."[36] Tex. Elec. Code Ann. §§ 251.001(6), (7), (10) (West 2012);[37] <u>see also</u> <u>Hoyt</u>, 878 F. Supp. 2d at 735.

A "measure" is "a question or proposal submitted in an election for an expression of the voters' will and includes the

---

[35]The definition of "political contribution" in § 251.001(5) incorporates the definition of "campaign contribution" in § 251.001(3), which in turn incorporates the definition of "contribution" in § 251.001(2).

[36]As noted by the Fifth Circuit, "It is important not to conceive of expenditures and contributions in opposition to each other. Rather, contributions are best thought of as a subset of expenditures: all contributions are expenditures, but not all expenditures are contributions." <u>Catholic Leadership</u>, 2014 WL 3930139, at n.7.

[37]The definition of "political expenditure" in § 251.001(10) incorporates the definition of "campaign expenditure" in § 251.001(7), which in turn incorporates the definition of "expenditure" in § 251.001(6).

circulation and submission of a petition to determine whether a question or proposal is required to be submitted in an election for an expression of the voters' will." Tex. Elec. Code Ann. § 251.001(19) (West 2012). It is undisputed that the term "measure" "includes a recall election as well as any effort to circulate petitions in support of holding a recall election."[38]

"Whether a particular activity constitutes a political contribution depends on the specific facts of the situation." Hoyt, 878 F. Supp. 2d at 735. "[A] political contribution requires contributions be made 'to a . . . political committee' and be given with the "intent that it be used . . . on a measure.'" Id.

Defendants allege that "to the extent each church wishes to engage in [efforts related to recall elections] on its own and without coordinating with a candidate or political committee -- such as by funding their own ads to support a recall effort, or by advertising a recall effort on a church website" such activity would constitute a "direct campaign expenditure," rather than a political contribution, "and therefore would not be activity implicated by [§ 253.094(b)]."[39] Defendants further allege that "to the extent the pastor of each of the Plaintiff churches wishes to

---

[38]Defendants' Response in Opposition, Docket Entry No. 7, pp. 10-11; see also Defendants' Motion for Summary Judgment, Docket Entry No. 52, p. 11; Plaintiffs' Motion for Summary Judgment, Docket Entry No. 53, pp. 30, 38.

[39]Defendants' Motion for Summary Judgment, Docket Entry No. 52, p. 21.

advocate independently to his or her congregation in support of a particular recall effort, that activity is neither covered nor prohibited by § 253.094."[40]  Defendants contend that "such speech would not constitute a transfer of money, goods or services in coordination with a candidate or political committee, and therefore would not constitute a prohibited 'contribution.'"[41]

The court agrees that to the extent Plaintiffs wish to engage in recall efforts independently of each other or any political committee, such activity is not implicated by § 253.094(b). Plaintiffs therefore cannot show that such activity is "proscribed by statute."  Nat'l Fed'n of the Blind, 647 F.3d at 208 (quoting Miss. State Democratic Party, 529 F.3d at 545).  Accordingly, Plaintiffs lack standing to challenge § 253.094(b) with regard to such conduct.

However, Plaintiffs allege that they also intend to coordinate with each other "and with other individuals and organizations, for the principal purpose of circulating and submitting recall petitions and otherwise advocating recalls, including through the raising and spending of funds, and the other actions" identified in their Second Amended Complaint.[42]  Plaintiffs specifically allege that they

---

[40]Id.

[41]Id.

[42]Second Amended Complaint, Docket Entry No. 36, pp. 11-16 ¶¶ 5.1-5.3.

are Texas corporations and want to engage in the circulation and submission of petitions to call for a recall election, by working in concert with each of the other plaintiffs and other interested individuals and organizations, to circulate and submit petitions, and publicly advocate the recall petition efforts, including through the concerted raising and spending of funds and contribution of facilities and resources.[43]

Defendants acknowledge that Plaintiffs' proposed coordination will render the three churches a "political committee" under Texas law.[44]   See Tex. Elec. Code Ann. § 251.001(12) (West 2012) ("'Political committee' means a group of persons that has as a principal purpose accepting political contributions or making political expenditures."); Catholic Leadership, 2014 WL 3930139, at n.27 ("Texas does not make the political committee label voluntary -- groups wishing to engage in collective political speech must comply with the burdens imposed by Texas law.").   Thus, Plaintiffs intend to engage in conduct that is proscribed by § 253.094(b) to the extent that each intends to make a "direct or indirect transfer of money, goods, services, or any other thing of value," toward their coordinated efforts "with the intent that it be used . . . on a measure."[45]   Tex. Elec. Code Ann. §§ 251.001(2), (3), (5) (West 2012).   For example, Plaintiffs allege that they each "intend[] to

_____

[43]Id. at 26 ¶ 10.7.

[44]Defendants' Motion for Summary Judgment, Docket Entry No. 52, pp. 21-22.

[45]As noted above, "the circulation and submission of a petition to call an election" may constitute a political contribution and a recall election is a measure.   See Tex. Elec. Code Ann. § 251.001(19) (West 2012), § 253.094(b) (West Supp. 2014).

contribute funds from [their] regular budget to support the recall"
and to "[c]oordinate with the two other Plaintiff churches in this
matter . . . for the principal purpose of circulating and
submitting recall petitions," among other things.[46]  Any contribu-
tion of "funds" from their budgets to their coordinated recall
effort would constitute a prohibited political contribution under
§ 253.094(b).

Defendants acknowledge that such activity is barred by
§ 253.094(b).[47]  Defendants argue, however, that Plaintiffs cannot
establish a credible threat of prosecution in light of Plaintiffs'
ability to register as a "direct campaign expenditure only
committee" and a recent federal court injunction barring Defendants
from enforcing "laws, rules, or regulations" that prohibit
corporate political contributions to direct campaign expenditure
only committees."[48]

(a)   The Texans for Free Enterprise Injunction

The injunction at issue arose out of a challenge to
§ 253.094(a) and states:

---

[46]Second Amended Complaint, Docket Entry No. 36, pp. 11-16
¶¶ 5.1-5.3.

[47]Defendants' Motion for Summary Judgment, Docket Entry No. 52,
p. 13 ("For purposes of the instant case, . . . a corporation in
Texas cannot give money, goods or services to a candidate or to a
group that qualifies as a political committee, if the intent of the
corporation in giving that [] money, good or service [is that it
be] used in connection with a recall election.").

[48]Id. at 22-23, 26-28.

Defendants TEXAS ETHICS COMMISSION, DAVID A. REISMAN, and their commissioners, agents, servants, employees, any other persons or entities in active concert or participation with Defendants are permanently enjoined from:

1.   Enforcing or attempting to enforce the contribution restrictions of Sections 253.003(b) and 253.094(a) of the Texas Election Code, and any applicable rules and regulations regarding those provisions when applied to contributions to Texans for Free Enterprise and all other similarly situated corporations for the purpose of making direct campaign expenditures; and,

2.   Enacting or attempting to enforce any other laws, rules, or regulations that violate the First Amendment rights of Texans for Free Enterprise and all other similarly situated corporations by directly or indirectly prohibiting contributions to a direct campaign expenditure-only committee for the purpose of making direct campaign expenditures.[49]

Defendants argue that because Plaintiffs "disclaim any intention to coordinate their activities with any person who is a candidate for, or who plans to be a candidate for, the offices for which they plan to seek a recall," any political committee that they form could register as a "direct campaign expenditure only" committee, and Defendants would be barred from enforcing § 253.094(b) to prohibit Plaintiffs' proposed political contributions to that committee.[50]

Plaintiffs argue that the <u>Texans for Free Enterprise</u> Injunction does not protect them from prosecution for their

---

[49]Agreed Final Judgment and Permanent Injunction at 3-4 <u>Texans for Free Enterprise v. Texas Ethics Commission</u>, No. 1:12-cv-0845-LY (W.D. Tex. Dec. 20, 2013) ("<u>Texans for Free Enterprise</u> Injunction"), attached as Exhibit 1 to Defendants' Motion for Summary Judgment, Docket Entry No. 52-1.

[50]Defendants' Motion for Summary Judgment, Docket Entry No. 52, pp. 22-23.

intended conduct.  Plaintiffs point out that the injunction arose out of a challenge to § 253.094(a), that "<u>Free Enterprise</u> did not involve a challenge to subsection (b), and the resulting injunction does not mention subsection (b)."[51]  Plaintiffs observe that "Part '1.' of the injunction only concerned the statutes at issue in that case -- sections 253.003(b) and 252.094(a) -- and rules and regulations 'regarding <u>those</u> provisions.'"[52]  Plaintiffs further argue that "Part '2.' . . . does not cover Plaintiffs' intended conduct because Plaintiffs' activities are assured to take them outside the definition of a direct campaign expenditure-only committee."[53]

> (b)   Direct Campaign Expenditure Only Committees

Plaintiffs argue that any political committee they form by coordinating their efforts to, among other things, circulate recall petitions, cannot qualify as a direct campaign expenditure only committee because the committee will inevitably make political contributions to other political committees working on the recall.[54]

---

[51]Plaintiffs' Response, Docket Entry No. 59, p. 14.

[52]<u>Id.</u>

[53]<u>Id.</u>

[54]<u>Id.</u> at 15-18; <u>see also</u> Joint Heirs' Interrogatory Responses, attached to Plaintiffs' Motion for Summary Judgment, Docket Entry No. 53-19, p. 8; Houston's First Interrogatory Responses, attached to Plaintiffs' Motion for Summary Judgment, Docket Entry No. 53-20, p. 8; Faith Outreach International's Interrogatory Responses, attached to Plaintiffs' Motion for Summary Judgment, Docket Entry No. 53-21, p. 8.

Plaintiffs' argument rests on Texas's definition of "direct campaign expenditure." Under Texas law a "direct campaign expenditure" is defined to mean "a campaign expenditure that does not constitute a campaign contribution by the person making the expenditure." Tex. Elec. Code Ann. § 251.001(8) (West 2012).

Regulations issued by the Texas Ethics Commission state:

(5) A campaign expenditure is not a contribution from the person making the expenditure if:

(A) it is made without the prior consent or approval of the candidate or officeholder on whose behalf the expenditure was made; or

(B) it is made in connection with a measure, but is not a political contribution to a political committee supporting or opposing the measure.

1 Tex. Admin Code § 20.1. Plaintiffs contend that because their political committee "plans to coordinate its recall activity with other committees 'supporting or opposing the measure,' this results in a contribution to the other committee."[55] Therefore, because the committee cannot limit itself to direct campaign expenditures, it cannot register as a direct campaign expenditure only committee.[56]

However, as Defendants explain in their Reply, under Texas law a "direct campaign expenditure only committee" is <u>not</u> a political committee that only makes "direct campaign expenditures."[57] Instead, under Texas law a "direct campaign expenditure only

---

[55]<u>Id.</u>

[56]<u>Id.</u>

[57]Defendants' Reply, Docket Entry No. 60, pp. 8-11.

committee" is a political committee that files an affidavit stating that it "will not use its political contributions to make political contributions to any candidate for elective office, officeholder, or political committee that makes a political contribution to a candidate or officeholder."[58] 1 Tex. Admin. Code § 22.5. Thus, a "direct campaign expenditure only committee" may make both direct campaign expenditures and political contributions to other direct campaign expenditure only committees. Accordingly, Defendants state that even if Plaintiffs' political committee makes political contributions to another political committee, it may still register as a "direct campaign expenditure only committee," as long as such contributions are not made to political committees that make "political contribution[s] to a candidate or officeholder." Id.

(c)   Plaintiffs' Proposed Political Committee

Although it appears that Plaintiffs' proposed political committee may organize and register as a "direct campaign

---

[58]According to Defendants, "the term 'direct campaign expenditure only committee' is a new term of art -- not previously found in the Texas Election Code or [Texas Ethics Commission] Rules -- that came into existence as a direct result of the Texans for Free Enterprise lawsuit." Defendants' Reply, Docket Entry No. 60, pp. 8-9. "[A] 'direct campaign expenditure only committee' was defined in Texans for Free Enterprise to mean a political committee that 'does not make any contributions to candidates or their official committees.'" Id. at 9 (quoting Texans for Free Enterprise, 732 F.3d at 536). Accordingly, "pursuant to Texans for Free Enterprise's controlling definition of the newly-created term 'direct campaign expenditure only committee,' a 'direct campaign expenditure only committee' that registers with [the Texas Ethics Commission] as such can contribute funds to other political committees, so long as that political committee is not connected with a candidate." Id.

expenditure only committee," whether it will do so is unclear. Plaintiffs have disclaimed any intention to coordinate their activities with any person who is a candidate for, or who plans to be a candidate for, the offices for which they plan to seek a recall.[59] Yet, Plaintiffs also allege that they do not want to be a political committee at all and challenge Texas's political committee disclosure requirements.[60] Plaintiffs have made no representation that they would organize and register their proposed political committee as a "direct campaign expenditure only committee" if permitted to do so. Although Plaintiffs testified to their willingness to file "something with the Ethics Commission" stating that they would not coordinate with any candidate,[61] they

---

[59]Joint Heirs' Interrogatory Responses, attached to Plaintiffs' Motion for Summary Judgment, Docket Entry No. 53-19, p. 7; Houston's First Interrogatory Responses, attached to Plaintiffs' Motion for Summary Judgment, Docket Entry No. 53-20, p. 7; Faith Outreach International's Interrogatory Responses, attached to Plaintiffs' Motion for Summary Judgment, Docket Entry No. 53-21, p. 7.

[60]Second Amended Complaint, Docket Entry No. 36, pp. 29-31 ¶¶ 10.36-10.54. Plaintiffs' challenge to Texas's political committee disclosure requirements is discussed in detail below.

[61]See Transcript of Injunction Hearing, Docket Entry No. 26, pp. 86, 102-03, 122. The pastors for each of the plaintiff churches testified as follows:

Q [by Defendants' counsel]   And would you have any objection to filing something with the Ethics Commission that stated that on the record, that you would agree not to -- that your organization agrees not to engage in any activity with the coordination of the candidate?

(continued...)

-24-

[61](...continued)
A [by Pastor Flowers of plaintiff Faith Outreach International Center] I wouldn't have any objection to that.

Id. at 86:9-13.

Q [by Defendants' counsel] And would you be willing to file something like a sworn statement that says that your church would agree that it is not going to give any money or make any kind of expenditures from its own funds in support of a particular candidate in coordination with a candidate? Would you be willing to agree to something like that and file a statement to that effect?

A [by Pastor Bergstrom of plaintiff Houston's First Church of God] I would be willing to do that.

Id. at 102:20-103:1.

Q [by Defendants' counsel] Would you be willing -- you testified a moment ago that you don't intend to coordinate with the candidates, and that really means not only giving money to candidates, but, for example, having a candidate call you up and say, "It would be really great if you got your church on board and starting gathering petitions for me." You don't intend to do any of that kind of activity, do you?

A [by Pastor McCrutcheon of plaintiff Joint Heirs Fellowship Church] No.

Q Okay. Would you be willing to swear that you wouldn't do any of that kind of activity or coordinate with a group who does that kind of activity?

A Coordinate with a group?

Q Coordinate with some other group. Let's say some other group is helping out a candidate because the candidate asked them to. Would you be willing to agree that you wouldn't help out that other group?

THE COURT: You won't coordinate with any group that is supporting a specific candidate? Would you agree to that?

(continued...)

-25-

also testified that they are opposed to registering their political

committee in any form[61] and have made no affirmative representation

---

[61] (...continued)
THE WITNESS:  Yes.

Id. at 122:2-20.

[62] See id. at 75, 103, 124-25.  The pastor for each of the
plaintiff churches testified as follows:

> Q. [by Defendants' Counsel]  Other than the costs that we
> talked about associated with having to register as a
> political committee, do you have any other objections
> yourself to having to register as a political committee,
> if you form a group that is qualified as one?
>
> A. [by Pastor Bergstrom of plaintiff Houston's First
> Church of God]  Personally, I believe the church should
> have the freedom to be what the church is supposed to be,
> to be the moral compass of our communities, of our state.
> And I believe in a perfect world, we would have the right
> to do that.
>
> Q.   Well, let me be clear. So you will be able to do it.
> You would just have to file some paperwork if you did it
> in the form of political committees.   So do you
> understand that aspect?
>
> A.   And part of my objection to the political committee
> is the expense.
>
> Q.   So other than -- that's what I'm trying to get at.
> Other than the expense, is there something else that you
> object to?
>
> A.   Personally, just my own convictions, I would object
> to our having to do that.
>
> Q.   You feel that churches shouldn't have to do that?
>
> A.   Correct.

Id. at 103:2-21.

(continued...)

---

[62](...continued)

Q. [by Defendants' counsel]  You testified earlier that you think it would be too expensive to file paperwork as a political committee, correct?

A. [by Pastor McCrutcheon of plaintiff Joint Heirs Fellowship Church]  Uh-huh.

Q.  Do you have any other objections to having to file paperwork as a political committee, if your church qualified as part of one?

A.  I don't -- I wouldn't even want to be part of a political committee at all.

Q.  Well, but you do want to have discussions with other churches in an attempt to influence a recall election, right?  That is what your testimony is today, correct?

A.  I thought, you know -- I guess that is where I was somewhat confused at times.

Q.  Let me ask you:  Why wouldn't be you what to do that?  Why wouldn't be want to be considered a political committee, other than the cost issue?

A.  Cost is one of the main things, but also I try to -- the other part of it is there is so much -- I feel that is an intrusion --

Q.  So you just don't want to basically have to file more paperwork with the government?  Would that be a way of saying that?

A.  I guess you could say that.

Id. at 123:13-124:10.

Q. [by Plaintiffs' counsel]  Do you want to become a political committee?

A. [by Pastor Flowers of plaintiff Faith Outreach International Center]   No.

Q.  Why not?

(continued...)

-27-

that they will file the required affidavit.  Indeed, Plaintiffs

have suggested that they may not organize a political committee at

all if required to comply with Texas's treasurer-appointment and

disclosure requirements.[63]  The court therefore cannot discern

whether Plaintiffs' proposed political committee would constitute

a "direct campaign expenditure only" committee, or some other

general- or specific-purpose committee under Texas law.

---

[62](...continued)
A.    That's a good question.  I think that just as other
entities within society have the freedom to act, freedom
to speak --

Q.    Like what?

A.    Much like the press.  I don't know of any hoops that
they have to jump through,  any kind of arrangements they
have to get involved in in order to engage in these
issues.   And the freedom of speech, especially the
freedom of the church to operate under the parameters
that was given in scripture should not be in any way
impinged or hindered by all of these activities and
moneys that have to be spent and things that have to be
said and done along those lines.

Id. at 75:4-18.

[63]See, e.g., id.; see also id. at 86:14-88:16 (discussing the
costs associated with forming a political committee and mentioning
that it would be "cost prohibitive" to do so); id. at 93:3-23
(expressing unwillingness to form a political committee because
fundraising for the committee "would be a complete distraction"
from the church's efforts "to rebuild a hospital in Kenya"); id. at
115:2-9 (stating in reference to the costs associated with forming
a political committee that even "[s]ixty dollars would have an
effect on [the] church" and that in light of those costs "it seems
like [the church is] going to be left out of the game if [it] ha[s]
to [set up a measures-only political committee]").

2.  <u>Plaintiffs Have Not Established Standing to Challenge</u>
    <u>§ 253.094(b)</u>

Because the court cannot discern the nature of Plaintiffs'
proposed political committee, the court cannot determine whether
political contributions to that committee would fall within the
realm of activity that Defendants are barred from enforcing under
the <u>Texans for Free Enterprise</u> Injunction.   Moreover, although
§ 253.094(b) prohibits political contributions in connection with
a recall election, without any indication from Plaintiffs that
their committee would organize and register as a "direct campaign
expenditure only committee" the court cannot determine whether
political contributions to that committee would be permissible
under <u>Texans for Free Enterprise</u> or would be lawfully proscribed in
furtherance of Texas's interest in preventing circumvention of its
ban on corporate contributions to candidates.[64]   See <u>Catholic</u>
<u>Leadership Coal. of Texas v. Reisman</u>, No. 13-50582, 2014
WL 3930139, at *25-27 (5th Cir. Aug. 12, 2014) (upholding Texas
Election Code § 253.094(a)'s restriction on corporate contributions

---

[64]<u>See</u> Defendants' Answers to Plaintiffs' Interrogatories,
attached to Plaintiffs' Motion for Summary Judgment, Docket Entry
No. 53-24, p. 12 ("To the extent Plaintiffs' challenge the
prohibition on corporations making contributions to political
committees that then contribute directly to candidates, courts have
recognized the government's interests in preventing corporations
from using committees as a 'pass through' to circumvent lawful
prohibitions on direct contributions to candidates, and these
latter prohibitions are based in part on the government's
legitimate anti-corruption interests." (citing <u>Catholic Leadership</u>
<u>Coal. of Texas v. Reisman</u>, No. A-12-CA-566-SS, 2013 WL 2404066
(W.D. Tex. May 30, 2013), <u>aff'd in part and rev'd in part</u>, 2014
WL 3930139 (5th Cir. Aug. 12, 2014)); <u>id.</u> at 15.

to political committees as applied to the in-kind contribution of an email mailing list from a corporation to a political committee that engaged in "both independent expenditures and direct contributions to candidates" because "Texas's ban on corporate contributions to political committees engaging in political contributions serves as an anticircumvention measure to prevent corporations from using a political committee to do an end-run around Texas's direct contribution ban").

Accordingly, the court concludes that Plaintiffs have failed to plead a justiciable controversy with regard to their claims that § 253.094(b) prohibits them from lawfully "raising and spending funds in support of recall petitions"[65] or making other political contributions to their proposed political committee. See Hoyt, 878 F. Supp. 2d at 730 ("An injury for standing purposes must be (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." (citing Lujan, 112 S. Ct. at 2136)).

Plaintiffs also allege that § 253.094(b) is overbroad.[66] "The overbreadth doctrine permits a litigant to 'challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.'" Nat'l

---

[65]Second Amended Complaint, Docket Entry No. 36, pp. 11-16 ¶¶ 5.1-5.3.

[66]See Second Amended Complaint, Docket Entry No. 36, p. 33 ¶ 10.65.

Fed'n of the Blind, 647 F.3d at 210 (quoting Broadrick v. Oklahoma, 93 S. Ct. 2908, 2916 (1973)). "But the overbreadth doctrine applies on a provision by provision basis:  the plaintiff must establish injury under a particular provision of a regulation that is validly applied to its conduct, then assert a facial challenge, under the overbreadth doctrine, to vindicate the rights of others not before the court under that provision." Id. (quoting SEIU, Local 5 v. City of Hous., 595 F.3d 588, 598 (5th Cir. 2010) (internal quotation marks omitted)). Thus, "'Article III standing retains rigor even in an overbreadth claim.'" Id. (quoting Fairchild v. Liberty Indep. Sch. Dist., 597 F.3d 747, 754 (5th Cir. 2010)).  "'Although various prudential standing principles have been relaxed in some First Amendment cases, this relaxation does not eliminate the distinct and independent requirement of Article III that the dispute between the parties must amount to a case or controversy.'" Id. (quoting Henderson v. Stalder, 287 F.3d 374, 385 n.4 (5th Cir. 2002) (Jones, C.J., concurring)).

Even if the court were to accept Plaintiffs' argument that the Texans for Free Enterprise Injunction does not enjoin Defendants from enforcing § 253.094(b), in light of Plaintiffs' failure to indicate whether they will engage in their proposed conduct if required to comply with Texas's political committee disclosure requirements, the court is not convinced that Plaintiffs have demonstrated a "'practical likelihood that a controversy will

become real.'" Hoyt, 878 F. Supp. 2d at 731 (quoting Shields, 289 F.3d at 835).  As explained in § IV.A.1(c) above, Plaintiffs have testified that they are opposed to registering their proposed political committee in any form and have suggested that they may not organize a political committee at all if required to comply with Texas's treasurer-appointment and disclosure requirements.[67] Plaintiffs have made no subsequent effort to disavow their testimony.

In light of Plaintiffs' equivocation about whether they would in fact engage in their proposed conduct if doing so would subject them to Texas's political committee disclosure requirements, and because Plaintiffs have not developed the factual basis for standing with sufficient particularity, the court is not convinced that Plaintiffs have met their burden to demonstrate either a serious interest in acting contrary to § 253.094(b) or a threat of enforcement beyond mere speculation.  See Lujan, 112 S. Ct. at 2136-37 (holding that "[t]he party invoking federal jurisdiction

---

[67]Plaintiffs have had two opportunities to create a fact issue on standing, both in their original affidavits attached to their Motion for Preliminary Injunction and in their subsequent affidavits attached to their Motion for Summary Judgment.  In none of Plaintiffs' evidence or briefing do they ever indicate that they would be willing to coordinate if required to comply with Texas's political committee disclosure requirements, nor do they make any indication of how they intend to register or organize their proposed political committee within the framework provided by the Texas Election Code beyond their argument that their activities would "take them outside the definition of a direct campaign expenditure-only committee."  Plaintiffs' Reply, Docket Entry No. 59, p. 14.

-32-

bears the burden of establishing" each of the elements of standing "in the same way as any other matter on which the plaintiff bears the burden of proof, _i.e._, with the manner and degree of evidence required at the successive stages of the litigation," which, "[i]n response to a summary judgment motion," requires the plaintiff to "set forth by affidavit or other evidence specific facts" to establish standing); _cf._ _Eyikogbe v. Texas State Dep't of Highways & Pub. Transp._, 990 F.2d 1252 (5th Cir. 1993) ("Under Rule 56, a district court is not required to scour the record in search of evidence to support the non-movant; nor is the district court required to concoct arguments in opposition to the movant."). Accordingly, the court concludes that Plaintiffs have not met their burden to establish standing to challenge § 253.094(b).[68]

---

[68]Plaintiffs also argue that they can demonstrate a credible threat of enforcement because § 253.094(b) has "already been enforced against other churches and individuals in Texas for allegedly doing some of the same things the Plaintiffs seek to do here." Second Amended Complaint, Docket Entry No. 36, p. 23 ¶ 8.1. Plaintiffs reference enforcement actions brought by the mayor and district attorney of El Paso. _Id._ at 23-24 ¶¶ 8.2-8.8. Defendants argue that

> [t]o the extent Plaintiffs assert that they have standing because some government other than [the Texas Ethics Commission] might enforce § 253.094 against them, Plaintiffs have cited no authority to support the proposition that an injunction issued against [the Texas Ethics Commission] here would be in any way effective to redress any claimed injury related to enforcement of the Election Code by non-parties to this suit.

Defendants' Reply, Docket Entry No. 60, p. 7 n.1; _see also_ Defendants' Response, Docket Entry No. 58, p. 10; _cf._ _Hoyt_, 878 F. Supp. 2d at 743 ("The Court is at a loss to see how granting an
(continued...)

Plaintiffs' claims challenging § 253.094(b) will therefore be dismissed for lack of subject matter jurisdiction. Cf. Hoyt, 878 F. Supp. 2d at 725, 744 (dismissing claims that "§ 253.094(b) of the Election Code violates Plaintiffs' constitutional rights of freedom of speech, freedom of religion, due process, and equal protection" upon a finding that Plaintiffs lacked standing to challenge § 253.094(b)).

**B.   Plaintiffs' Challenge to § 253.096**

Plaintiffs bring facial and as-applied challenges to § 253.096.[69]  Section 253.096 provides that "[a] corporation or labor organization may make campaign contributions from its own property in connection with an election on a measure only to a

---

[68](...continued) injunction against Cook would redress Plaintiffs' injury. A ruling against Cook in this case would operate only against Cook; it would not operate to prevent non-party citizens from bringing suit to enjoin Plaintiffs from circulating recall petitions in the future.").   The court agrees with Defendants that Plaintiffs' alleged fear of enforcement by parties not before the court does not establish "a [case or] controversy as against [Defendants]." Defendants' Response, Docket Entry No. 58, p. 10.

[69]See Second Amended Complaint, Docket Entry No. 36, pp. 36-37 ("Texas Election Code § 253.096 is unconstitutional under the First Amendment to the United States Constitution as applied to Plaintiffs[.]"); id. at 34 (alleging that § 253.096 (which Plaintiffs refer to as the "PAC Requirement") "on [its] face and as applied, chill[s] Plaintiffs' exercise of religion," has "placed a substantial burden on Plaintiffs' religious beliefs and practices," is "not neutral or generally applicable," and is "susceptible to selective enforcement"); id. at 35 (alleging that § 253.096 "restrict[s] the right of Plaintiffs to petition the government for redress of grievances" and "treat[s] similarly situated persons differently concerning their ability to engage in protected constitutional activity-speech").

political committee for supporting or opposing measures exclusively."[70]  Tex. Elec. Code Ann. § 253.096 (West 2012).

Plaintiffs allege that under § 253.096, "[i]f an incorporated church desires to circulate recall petitions or otherwise speak in favor of a recall election or against a recall election, it can only do so by forming a measures-only political committee."[71] Plaintiffs contend that "[r]equiring a corporation to form a [political committee] before making a political contribution, or requiring the corporation to only make a contribution through a [political committee] is an unconstitutional infringement on free speech."[72]

### 1. Plaintiffs' Standing to Challenge § 253.096

Defendants argue that Plaintiffs lack standing to challenge § 253.096 because it does not apply to Plaintiffs' proposed conduct.[73]  Instead, Defendants contend that § 253.094(b)'s narrower

---

[70]For purposes of the present case, a "campaign contribution" is a "direct or indirect transfer of money, goods, services, or any other thing of value," "to a "political committee . . . with the intent that it be used . . . on a measure." Tex. Elec. Code Ann. §§ 251.001(2), (3) (West 2012). The definition of "campaign contribution" in § 251.001(3) incorporates the definition of "contribution" in § 251.001(2). As noted in § IV.A above, the parties acknowledge that Plaintiffs' proposed conduct will render them a political committee under Texas law. See Tex. Elec. Code Ann. § 251.001(12) (West 2012).

[71]Second Amended Complaint, Docket Entry No. 36, p. 9 ¶ 4.2.

[72]Id. at 27 ¶ 10.20.

[73]Defendants' Motion for Summary Judgment, Docket Entry No. 52, pp. 12-13 & n.4, pp. 26, 28; Defendants' Response in Opposition, (continued...)

prohibition on corporate political contributions "in connection with a recall election" controls.[74]

    (a)    The Applicability of § 253.096 to Plaintiffs' Proposed Recall-Related Activities

Emphasizing the interplay of §§ 253.094(a), 253.096, and 253.094(b) in the Texas Election Code's regulatory scheme, Defendants state that § 253.094(a) "prohibits <u>all</u> political contributions by a corporation," unless "the contribution is authorized by some other section of the Election Code."[75]

> Relevant here, Election Code § 253.096 permits corporations to make political contributions "in connection with an election on a measure only to a political committee for supporting or opposing measures exclusively." Because corporations are authorized under § 253.096 to make contributions to political committees in connection with a "measure," and because a recall election is a type of "measure," contributions to political committees in connection with a recall election would, at first glance, appear to be authorized by § 253.096. However, the more specific statute, § 253.094(b), which expressly prohibits corporate political contributions in connection with a recall, trumps the more general authority corporations are given in § 253.096 to make political contributions to support measures.[76]

---

[73] (...continued)
Docket Entry No. 7, pp. 9-13, 29; Defendants' Reply, Docket Entry No. 60, pp. 11-12.

[74] Defendants' Motion for Summary Judgment, Docket Entry No. 52, pp. 12-13 & n.4; Defendants' Response in Opposition, Docket Entry No. 7, p. 12.

[75] Defendants' Motion for Summary Judgment, Docket Entry No. 52, p. 12; Defendants' Response in Opposition, Docket Entry No. 7, p. 11.

[76] Defendants' Motion for Summary Judgment, Docket Entry No. 52, pp. 12-13 (citations omitted); <u>see also</u> Defendants' Response in (continued...)

Plaintiffs appear to acknowledge that § 253.094(b), rather than § 253.096, is the controlling provision in this case.[77] Nonetheless, citing Cook, 385 S.W.3d at 594, Plaintiffs contend that § 253.096 chills protected speech because it has "been enforced against other churches and individuals in Texas for

---

[76](...continued)
Opposition, Docket Entry No. 7, pp. 11-12.  Under § 311.026 of the Texas Government Code,

> (a) If a general provision conflicts with a special or local provision, the provisions shall be construed, if possible, so that effect is given to both.

> (b) If the conflict between the general provision and the special or local provision is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later enactment and the manifest intent is that the general provision prevail.

Tex. Gov't Code Ann. § 311.026; see also Tex. Gov't Code Ann. § 311.002 (West 2013).

[77]See Plaintiffs' Motion for Summary Judgment, Docket Entry No. 53, p. 17 n.8 ("While § 253.096 is a general provision permitting corporate contributions to measures-only committees, § 253.094(b) specifically prohibits corporate contributions in connection with recalls.  The Cook court was clearly wrong on this point as well -- § 253.094(b) controls and means that Plaintiffs may not simply set up a measures-only committee to make recall contributions, under the statutes as written." (discussing Cook v. Tom Brown Ministries, 385 S.W.3d 592 (Tex. App.—El Paso 2012, pet. denied))).    Plaintiffs' Second Amended Complaint alleges that Plaintiffs' intend to "do[] any of the [identified] activities in connection with a measures-only issue in addition to recall petition matters."  Second Amended Complaint, Docket Entry No. 36, p. 13 ¶ 5.1(m), p. 14 ¶ 5.2(m), pp. 15-16 ¶ 5.3(l).  However, Plaintiffs have not identified a measure other than the recall efforts in San Antonio and Houston for which they intend to make a campaign contribution.

allegedly doing some of the same things the Plaintiffs seek to do here."[78]

### (b)   Cook v. Tom Brown Ministries

In Cook a Texas appellate court instructed the El Paso City Clerk to decertify recall petitions after concluding that an incorporated church had made prohibited political and campaign contributions in connection with a recall election.   385 S.W.3d at 601-03, 608.   The court in Cook found that an incorporated church "made campaign contributions from its own property in connection with a measure-only recall election without properly making the contributions to a measure-only committee" in violation of § 253.096.[79]   Id. at 603.

Defendants have disavowed the Cook court's interpretation of §§ 253.094(b) and 253.096.[80]   Defendants argue that despite Cook,

---

[78]Second Amended Complaint, Docket Entry No. 36, p. 23 ¶ 8.1.

[79]The Cook opinion is discussed in more detail in § IV.E below.

[80]Defendants' Motion for Summary Judgment, Docket Entry No. 52, p. 18; Defendants' Response in Opposition, Docket Entry No. 7, p. 17; see also id. at 29 (("[T]o the extent Plaintiffs[] complain that § 253.094(b) is overly burdensome because they must form a 'measures only' political committee under § 253.096 in order to expend any funds, or donate any goods or services, in connection with a recall election, . . . that argument is based on [a] complete misreading of the law.  The formation of a 'measures only' committee will not permit a corporation to make 'political contributions' in connection with a recall election because the more specific prohibition on contributions to recall elections in § 253.094(b) trumps the less specific § 253.096.   Put simply, § 253.096 has no applicability to the facts of Plaintiffs' case; accordingly, Plaintiffs lack standing to maintain any challenge to
(continued...)

"§ 253.096 does not even apply to the facts of this case because it is not applicable in the recall election context."[81]  Defendants argue that because political contributions in connection with recall elections are prohibited in their entirety, they cannot be restricted to measures-only committees.[82]  Moreover, Defendants argue that § 253.096 is not a prohibition of campaign contributions.[83]  Rather, it authorizes campaign contributions that are otherwise separately prohibited under § 253.094(a).[84]

Plaintiffs argue that "[t]he Attorney General wants this Court to accept his opinion on how the law should be interpreted and ignore binding precedent in Texas as to how the law is actually being enforced."[85]  Plaintiffs further contend that "any assurances by Defendants that the law will not be applied in an unconstitutional manner rings hollow" because "the Attorney General's Office was presented with an opportunity to prevent or

---

[80](...continued)
§ 253.096 and lack standing to challenge § 253.094(b) on the basis that it implicates the need to form a political committee under § 253.096.").

[81]Defendants' Motion for Summary Judgment, Docket Entry No. 52, p. 28; see also id. at 17-19, 27-28; Defendants' Response in Opposition, Docket Entry No. 7, p. 29.

[82]Id.

[83]Defendants' Motion for Summary Judgment, Docket Entry No. 52, pp. 12-14; Defendants' Response in Opposition, Docket Entry No. 7, pp. 10-13.

[84]Id.

[85]Plaintiffs' Motion for Summary Judgment, Docket Entry No. 53, p. 34.

correct the misapplications of the law in <u>Cook</u> but chose not to do so."[86]   Accordingly, Plaintiffs argue that the <u>Cook</u> court's "interpretation of the state Election Code is currently the law in Texas,"[87] and "[t]he Attorney General's opinion as stated in a brief to a court does not supersede a Texas Appellate Court opinion, especially when it is not backed up by any concrete regulations or advisory opinions limiting the scope of the laws."[88]   Given the controversy in <u>Cook</u>[89] and the resulting opinion from the Texas court of appeals, Plaintiffs argue with some force that "the law is in such a state of disarray that not even lawyers at the top of their field can agree as to the scope and reach of § 253.094(b) and § 253.096."[90]

---

[86]Plaintiffs' First Amended Reply, Docket Entry No. 9-1, p. 13; <u>see also</u> Affidavit of Troy Brown in Support of Motion for Preliminary Injunction, attached to Motion for Preliminary Injunction, Docket Entry No. 9-4.

[87]<u>Id.</u> at 14.

[88]Plaintiffs' Motion for Summary Judgment, Docket Entry No. 53, pp. 34-35.

[89]<u>See, e.g.</u>, Brief of Appellant John F. Cook, attached to Plaintiffs' First Amended Reply, Docket Entry No. 9-10, pp. 33, 39-41.

[90]Plaintiffs' Motion For Summary Judgment, Docket Entry No. 53, p. 34; <u>see also</u> <u>id.</u> ("The Attorney General, Texas Appellate Court justices and lawyers for the parties in <u>Cook</u> cannot even agree as to what the law proscribes or prescribes.  How can a normal citizen be expected to understand and thus speak without fear of criminal punishment?").

2.   Plaintiffs' have not established that they have standing to challenge § 253.096.

As noted above, Plaintiffs acknowledge that because they are prohibited from making corporate political contributions under § 253.094(b), they cannot take advantage of § 253.096's authorization of campaign contributions "in connection with an election on a measure."[91]  See Tex. Elec. Code Ann. § 253.096 (West 2012).  Plaintiffs contend, however, that "if th[e] Court enjoins the enforcement of the ban on recall contributions [in § 253.094(b)], recalls will remain defined as a type of 'measure,' and therefore § 253.096 would be applicable to the contributions at issue here."[92]  Because, as explained in § IV.A above, Plaintiffs have not met their burden to establish standing to challenge § 253.094(b), the court need not consider whether § 253.096 would apply to Plaintiffs' conduct were § 253.094(b) enjoined.

Plaintiffs also allege that they intend to coordinate their "activities in connection with a measures-only issue in addition to recall petition matters."[93]  However, they have identified no measures-only issue other than the recall efforts in San Antonio and Houston for which they wish to make a campaign contribution. Nor have they identified any political committee engaged in

---

[91]See id. at 17 n.8

[92]Plaintiffs' Response, Docket Entry No. 59, p. 12.

[93]Second Amended Complaint, Docket Entry No. 36, pp. 11-16 ¶¶ 5.1-5.3.

measures-only issues other than recall elections to which such a contribution could be made. The court therefore concludes that Plaintiffs have not met their burden to establish a serious intent to act contrary to § 253.096 with regard to non-recall measures.

In addition, because Plaintiffs have presented no evidence or made any affirmative representation that they would file the affidavit necessary to designate their proposed political committee as a "direct campaign expenditure only committee," the court need not consider whether, in light of the Fifth Circuit's opinion in Texans for Free Enterprise, § 253.096 might apply to any "direct campaign expenditure only committee" Plaintiffs might form. Moreover, Plaintiffs have not alleged whether any political committee they might form by coordinating their efforts will constitute a "committee for supporting or opposing measures exclusively" under Texas law. See Tex. Elec. Code Ann. § 253.096 (West 2012); see also id. § 251.001(4) (defining "general-purpose committee" under Texas law); id. § 251.001(3) (defining "specific-purpose committee" under Texas law). Plaintiffs have simply failed to show that § 253.096 proscribes any of their proposed activity. The court therefore concludes that Plaintiffs have not met their burden to establish standing to challenge § 253.096.

## C.   Plaintiffs' Challenge to § 253.094(a)

Plaintiffs allege that § 253.094(a) "is facially unconstitutional under the First Amendment to the United States

Constitution to the extent it prohibits corporations from making political contributions in connection with a recall election or, in the alternative, § 253.094(a) is unconstitutional as applied to Plaintiffs."[94]   Section 253.094(a) "prohibits corporations from 'mak[ing] a[n unauthorized] political contribution.'" <u>Texans for Free Enterprise</u>, 732 F.3d at 536 (quoting Tex. Elec. Code Ann. § 253.094(a)).   Like § 253.094(b), by its plain language § 253.094(a) only prohibits "political contributions" as that term is defined in the Texas Election Code.[95]   <u>See</u> Texas Elec. Code Ann. § 251.001(5) (West 2012), § 253.094(a) (West Supp. 2014).   As explained in <u>Texans for Free Enterprise</u>, however, some "political contributions" under Texas law -- those made to "direct expenditure only committees" -- are the equivalent of "independent expenditures" under the Supreme Court's campaign finance jurisprudence.   <u>See</u> <u>Texans for Free Enterprise</u>, 732 F.3d at 536, 538.

1.  <u>Plaintiffs' Standing to Challenge § 253.094(a)</u>

Section 253.094(a) was recently declared unconstitutional by the Fifth Circuit to the extent that it barred political

---

[94]<u>Id.</u> at 36.

[95]For purposes of this case, § 253.094(a) prohibits a "direct or indirect transfer of money, goods, services, or any other thing of value," to a "political committee that is offered or given with the intent that it be used . . . on a measure." Tex. Elec. Code Ann. §§ 251.001(2), (3), (5) (West 2012). As discussed above, the parties acknowledge that Plaintiffs' proposed activity will render them a "political committee" under Texas law.

contributions to a "direct campaign expenditure only committee."
Texans for Free Enterprise, 732 F.3d at 537–38. The resulting
injunction, discussed in § IV.A above, enjoins Defendants from
enforcing § 253.094(a) "by directly or indirectly prohibiting
contributions to a direct campaign expenditure-only committee for
the purpose of making direct campaign expenditures."[96]

Defendants argue that because Plaintiffs "disclaim any
intention to coordinate their activities with any person who is a
candidate for, or who plans to be a candidate for, the offices for
which they plan to seek a recall," their proposed political
committee may register as a "direct campaign expenditure only
committee"[97] and that the Texans for Free Enterprise Injunction
would bar Defendants from enforcing § 253.094(a) against Plaintiffs
to prevent political contributions to that committee.[98] Defendants
therefore argue that in light of the Texans for Free Enterprise
Injunction Plaintiffs have failed to establish a credible threat of
prosecution by the Texas Ethics Commission.[99]

Moreover, as Defendants point out, the Texas Ethics Commission
has promulgated rules to conform with the holding in Texans for

---

[96]Texans for Free Enterprise Injunction, attached as Exhibit 1
to Defendants' Motion for Summary Judgment, Docket Entry No. 52-1,
p. 5.

[97]Defendants' Motion for Summary Judgment, Docket Entry No. 52,
p. 22.

[98]Id. at 22–23.

[99]Id. at 26–27.

Free Enterprise.[100]  Section 22.5(c) of the Texas Administrative
Code specifically states that "[a] corporation's or labor
organization's making of a political contribution to a political
committee that has filed an affidavit [as a direct campaign
expenditure only committee] does not constitute a violation of
§ 253.094(a) of the Election Code."  1 Tex. Admin. Code § 22.5(c).
Thus, if Plaintiffs' proposed political committee were to register
as a direct campaign expenditure only committee, any contributions
Plaintiffs made to that committee would not "constitute a violation
of § 253.094(a)."[101]  Id.

> 2. Plaintiffs have not met their burden to establish
>    standing to challenge § 253.094(a).

As explained in §§ IV.A.1(c), IV.A.2, and IV.B.2 above,
Plaintiffs have not alleged that they intend to file the affidavit
necessary to register their proposed political committee as a
"direct campaign expenditure only committee."  Although Plaintiffs
testified to their willingness to file "something with the Ethics
Commission" stating that they would not coordinate with any
candidate,[102] they also testified that they are opposed to
registering their political committee in any form and have made no

---

[100]See Defendants' Reply, Docket Entry No. 10, pp. 8-11.

[101]See id.; see also Defendants' Motion for Summary Judgment,
Docket Entry No. 52, pp. 26-27; Defendants' Response, Docket Entry
No. 58, pp. 7-10.

[102]See Transcript of Injunction Hearing, Docket Entry No. 26,
pp. 86, 102-03, 122.

affirmative representation that they will file the required
affidavit or otherwise organize as a direct campaign expenditure
only committee.[103]   The court therefore cannot determine whether
Plaintiffs' proposed conduct would constitute a political
contribution to a "direct campaign expenditure only committee"
subject to the exacting scrutiny applicable to limitations on core
First Amendment rights of political expression; a political
contribution to a political committee subject to a lesser level of
scrutiny and perhaps lawfully proscribed in furtherance of Texas's
interest in preventing circumvention of its ban on corporate
contributions to candidates; or even whether, in light of the
perceived burden of complying with Texas's political committee
disclosure requirements, Plaintiffs will actually engage in conduct
rendering them a political committee.   Any ruling by the court
would be contingent on how Plaintiffs choose to organize and
register their proposed political committee, if they choose to do
so at all.   For the court to opine on the constitutionality of
§ 253.094(a) should Plaintiffs choose to form a general purpose
committee,[104] special purpose committee,[105] direct campaign
expenditure only committee,[106] "committee for supporting or opposing

---

[103]Transcript of Injunction Hearing, Docket Entry No 26,
pp. 75, 103, 124-25.

[104]Tex. Elec. Code Ann. § 251.001(14) (West 2012).

[105]Tex. Elec. Code Ann. § 251.001(13) (West 2012).

[106]1 Tex. Admin. Code Ann. § 22.5.

-46-

measures exclusively,"[107] or some combination thereof, especially when Plaintiffs have not indicated that they would, and in fact suggest that they would not,[108] make a choice at all, would constitute an advisory opinion.  See Alabama State Fed'n of Labor, Local Union No. 103, United Bhd. of Carpenters & Joiners of Am. v. McAdory, 65 S. Ct. 1384, 1389-90 (1945) ("This Court is without power to give advisory opinions.  It has long been its considered practice not to decide abstract, hypothetical or contingent questions, or to decide any constitutional question in advance of the necessity for its decision, or to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied, or to decide any constitutional question except with reference to the particular facts to which it is to be applied."  (citations omitted)).  Accordingly, the court concludes that Plaintiffs have failed to establish a justiciable controversy with regard to their challenges to § 253.094(a).

**D.   Plaintiffs' Challenges to §§ 251.001(12), 252.001, and 253.031(b)**

Plaintiffs allege that § 251.001(12) "impose[s] political committee status" on them, requiring them to appoint a campaign treasurer and triggering Texas's political committee disclosure requirements, which, Plaintiffs argue, "unconstitutionally

---

[107]See Tex. Elec. Code Ann. § 253.096 (West 2012).

[108]See Transcript of Injunction Hearing, Docket Entry No. 26, pp. 75, 86–88, 93, 103, 115, 124–25.

-47-

infringes free speech."[109]   Section 251.001(12) defines "political committee" to mean "a group of persons that has as a principal purpose accepting political contributions or making political expenditures."   Tex. Elec. Code Ann. § 251.001(12) (West 2012).

Plaintiffs allege that if they "work together for the primary purpose of accepting political contributions and making political expenditures[,] they are a political committee under Texas Law."[110] See also Catholic Leadership, 2014 WL 3930139, at n.27 ("Texas does not make the political committee label voluntary -- groups wishing to engage in collective political speech must comply with the burdens imposed by Texas law.").   "Thus the Plaintiffs, who only want to speak out in support of even one measure, would be forced to incur the burdens of becoming a political committee under Texas law."[111]   Since Plaintiffs have refrained from engaging in their intended conduct because of the perceived burdens of being deemed a political committee under Texas law, the court concludes that Plaintiffs have established standing to challenge §§ 251.001(12), 252.001, and 253.031(b).   See, e.g., Human Life of Washington Inc. v. Brumsickle, 624 F.3d 990, 1001 (9th Cir. 2010) ("Because Human Life's decision to refrain from implementing its educational

---

[109]Second Amended Complaint, Docket Entry No. 36, p. 30 ¶ 10.45; see also id. ¶ 10.46 ("Imposing political committee status on groups wanting to make political expenditures and/or accept political contributions for a measure unconstitutionally burdens speech.").

[110]Id. at 30 ¶ 10.42.

[111]Id. ¶ 10.43.

program was based on a reasonable fear of enforcement of the
Disclosure Law, we conclude that Human Life has established a case
or controversy.").

Plaintiffs contend that "[p]olitical committee status and its
attendant burdens -- which follow from the [treasurer] appointment
requirement contained in § 252.001 -- are unconstitutional
(I) facially with respect to political committees active on
measures and . . . (ii) as applied to groups with minimal financial
activity such as Plaintiffs."[112]

1.   The Level of Scrutiny to be Applied

Because § 251.001 simply defines the terms used in other
provisions of the Election Code, the level of scrutiny to be
applied to § 251.001 depends upon the level of scrutiny to be
applied to those other challenged statutes.  See Vermont Right to
Life Comm., Inc. v. Sorrell, 758 F.3d 118, 137 (2d Cir. 2014).
Addressing a challenge to Vermont's definition of "political
committee," the Second Circuit explained in Vermont Right to Life:

> A defined term such as "political committee" is simply a
> useful drafting tool.  The definition sets out the domain
> of a series of separate statutory provisions.  For
> example, the statute currently defines "political
> committee" in section 2901(13), then subjects every
> "political committee" to disclosure requirements in
> section 2964.  The statute could be rewritten to dispense
> with the defined term "political committee" by making the
> disclosure requirements a standalone provision.  The same
> process could be followed with every other provision,
> including the contribution limitations in section
> 2941(a)(4).  This process would not alter the substance

---

[112]Id. ¶ 10.44.

of the statute, and the resulting statute likely would be unwieldy; it would be more difficult to apply and review. But it would lack a "political committee" definition that could be subjected to the type of challenge envisioned by [the plaintiffs].

It is the challenged regulation, not the [political committee] definition, therefore, that determines what level of scrutiny should apply.

Id.  Here, the conduct-regulating provisions that Plaintiffs challenge are §§ 252.001 and 253.031(b) of the Texas Election Code.[113]  Section 252.001 states that "[e]ach candidate and each political committee shall appoint a campaign treasurer as provided by [Chapter 252 of the Texas Election Code]."  Tex. Elec. Code Ann. § 252.001 (West 2012).  Section 253.031(b) provides that "[a] political committee may not knowingly accept political contributions totaling more than $500 or make or authorize political expenditures totaling more than $500 at a time when a campaign treasurer appointment for the committee is not in effect."  Tex. Elec. Code Ann. § 253.031(b) (West 2012).  "[T]he treasurer serves as the cornerstone of Texas's entire general-purpose committee campaign-finance disclosure regime."  Catholic Leadership, 2014 WL 3930139, at *24.

Plaintiffs argue that the treasurer-appointment requirements of §§ 252.001 and 253.031 are a prior restraint on speech.[114]  This argument was considered and rejected by the Fifth Circuit in

---

[113]Id. at 29 ¶¶ 10.37–10.38; 36–37.

[114]Second Amended Complaint, Docket Entry No. 36, pp. 30–31 ¶ 10.47.

Catholic Leadership. Id. at *21-23. Instead, the Fifth Circuit analyzed "the treasurer-appointment requirement" of § 253.031(b) "as a disclosure and/or organizational requirement." Id. at *22. The Fifth Circuit provided two justifications for its conclusion:

> First, and foremost, the treasurer-appointment requirement is a disclosure requirement: all that the provision requires is that a general-purpose committee take simple steps to formalize its organizational structure and divulge additional information to the government. And . . . general-purpose committees remain fully in control of their compliance with the treasurer-appointment requirement. No external factor limits the Committee's ability to speak . . . . Accordingly, a lower level of scrutiny is appropriate because any limit on speech created by the requirement arises solely from the committee's own choice to not provide information to the government.

> Second, to the extent we still have concerns regarding prior restraints in the campaign-finance context, those concerns can be addressed through the existing constitutional test for disclosure requirements.

Id. at *22-23 (footnote omitted) (citations omitted); see also Vermont Right to Life, 758 F.3d at 137 ("[The plaintiff] highlights the following obligations that apply to an organization once it is defined as a political committee: registration, recordkeeping necessary for reporting, and reporting requirements. It asserts these are the very burdens that are onerous as a matter of law. These requirements amount to the establishment of a disclosure regime." (citations omitted) (internal quotation marks omitted)).

"Disclosure and organizational requirements receive a further lessened level of scrutiny [than either expenditure limitations or contribution limitations]." Catholic Leadership, 2014 WL 3930139,

at *11. "To defend disclosure and organizational requirements, the government must show a 'sufficiently important governmental interest that bears a substantial relation' to the requirement." Id. (quoting SpeechNow.org v. FEC, 599 F.3d 686, 696 (D.C. Cir. 2010) (en banc)).

## 2. Sufficiently Important Governmental Interest

The Fifth Circuit has recognized that "Texas has a sufficiently important interest to justify the constitutionality of the treasurer-appointment requirement," explaining that

> the public has an interest in knowing who is speaking about a candidate and who is funding that speech, no matter whether the contributions were made toward administrative expenses or independent expenditures. Further, requiring disclosure of such information deters and helps expose violations of other campaign finance restrictions such as those barring contributions from foreign corporations or individuals. These are sufficiently important governmental interests to justify requiring [the plaintiffs] to organize and report . . . as a political committee.

Id. at *23 (quoting SpeechNow.org, 599 F.3d at 698).   The Fifth Circuit also recognized Texas's "informational interest in ensuring the smooth functioning of its campaign finance disclosure scheme." Id. at *24.   In holding that the treasurer-appointment requirement was properly tailored, the Fifth Circuit observed that "any burden created by the treasurer-appointment requirement -- essentially filling out and putting a three-page form that asks for basic information in the mail -- appears to be exceedingly minimal." Id. at *23 (footnote omitted).

Plaintiffs allege that "[t]here are no candidates . . . involved in measures-only recall elections."[115]   Accordingly, Plaintiffs argue, "imposing political committee status on groups wanting to make political expenditures for a measure does not satisfy 'exacting' scrutiny as it does not have a substantial relation to a 'sufficiently important' governmental interest."[116]

Defendants argue that "[b]y its very nature, advocating for an elected official to be recalled entails advocating in opposition of an identified person, for the purpose of holding an election to recall that person from his or her position" and that "[t]his type of political committee advocacy is precisely the type of activity that courts have found may be regulated through political committee disclosure requirements."[117]

The court is not convinced that the State's informational interest in disclosure is limited to advocacy for or against an identified candidate. See, e.g., Buckley v. Am. Constitutional Law Found., Inc., 119 S. Ct. at 647 ("[T]he State and supporting amici stress the importance of disclosure as a control or check on domination of the initiative process by affluent special interest groups. Disclosure of the names of initiative sponsors, and of the amounts they have spent gathering support for their initiatives,

---

[115]Id. at 31 ¶ 10.51.

[116]Id. ¶ 10.53.

[117]Defendants' Motion for Summary Judgment, Docket Entry No. 52, p. 29.

responds to that substantial state interest." (citations omitted) (internal quotation marks omitted)); Family PAC v. McKenna, 685 F.3d 800, 806 (9th Cir. 2012) ("We have repeatedly recognized an important (and even compelling) informational interest in requiring ballot measure committees to disclose information about contributions."); Human Life of Washington Inc., 624 F.3d at 1005 (upholding disclosure requirements in the context of ballot initiatives, noting that the considerations justifying disclosure requirements in candidate elections "'apply just as forcefully, if not more so, for voter-decided ballot measures'" (quoting California Pro-Life Council, Inc. v. Getman, 328 F.3d 1088, 1105 (9th Cir. 2003))).

Moreover, Texas has a sufficient "informational interest in ensuring the smooth functioning of its campaign finance disclosure scheme." Catholic Leadership, 2014 WL 3930139, at *24; see also Doe v. Reed, 130 S. Ct. 2811, 2819-20 (2010) ("The State's interest in preserving the integrity of the electoral process is undoubtedly important.  States allowing ballot initiatives have considerable leeway to protect the integrity and reliability of the initiative process, as they have with respect to election processes generally. . . .  [T]he State's interest in preserving electoral integrity . . . extends more generally to promoting transparency and accountability in the electoral process, which the State argues is essential to the proper functioning of a democracy."); Buckley v. Valeo ("Buckley"), 96 S. Ct. 612, 658 (1976) ("[N]ot least

significant, recordkeeping, reporting, and disclosure requirements are an essential means of gathering the data necessary to detect violations of the contribution limitations . . . .") . Accordingly, the court concludes that Texas has a sufficiently important governmental interest for its treasurer-appointment and concomitant disclosure requirements.

   3.  <u>Substantial Relation to the Government's Interest</u>

     In determining whether a disclosure requirement bears a substantial relation to a sufficiently important governmental interest, the court looks to the burden imposed by the requirement. <u>See</u> <u>Buckley</u>, 96 S. Ct. at 658 ("[D]isclosure requirements, as a general matter, directly serve substantial governmental interests. In determining whether these interests are sufficient to justify the requirements [the court] must look to the extent of the burden that they place on individual rights."). "This inquiry is 'one of degree, not kind, for it is well established that, in the ordinary case, a state informational interest is sufficient to justify the mandatory reporting of expenditures and contributions in the context of ballot initiatives.'" <u>Justice v. Hosemann</u>, No. 3:11-CV-138-SA-SAA, 2013 WL 5462572, at *9 (N.D. Miss. Sept. 30, 2013) (quoting <u>Canyon Ferry Road Baptist Church of East Helena, Inc. v. Unsworth</u>, 556 F.3d 1021, 1034 (9th Cir. 2009)). "The informational interest weakens as the size of the contributions decrease, and at some point contributions are so

-55-

small that disclosure may provide voters with little relevant information. When that point is reached, a court presumably should ask whether the burdens imposed by disclosure outweigh the informational interests served by it." Family PAC, 685 F.3d at 809 (footnotes omitted); see also Justice, 2013 WL 5462572, at *17 ("As held by numerous circuits, in the context of a ballot-initiative, the State's interest is limited to the informational interest. That interest, in turn, is proportionately related to the amount spent or raised by Plaintiffs in furtherance of their speech.").

Plaintiffs presented evidence to support their contention that the disclosure requirements imposed on political committee treasurers are onerous and burdensome.[118] Plaintiffs cite the various reports that a political committee treasurer is required to file.[119] Plaintiffs also produced a witness to testify to the costs of complying with the various federal and state reporting requirements imposed on political committees.[120] The thrust of Plaintiffs' argument appears to be that Texas's $500 threshold for appointing a treasurer and complying with the various disclosure requirements imposed on political committees is simply too low "as

---

[118]Second Amended Complaint, Docket Entry No. 36, p. 30 ¶ 10.44.

[119]Id. at 18-22 ¶¶ 6.15-6.21 (citing Tex. Elec. Code Ann. § 254.031 (West Supp. 2014), §§ 254.121, 254.124 (West 2012)).

[120]Transcript of Injunction Hearing, Docket Entry No. 26, pp. 38-64 (testimony of Chris Gober).

applied to groups with minimal financial activity such as Plaintiffs."[121]

Defendants contend that Plaintiffs' "claim that Texas'[s] committee treasurer-appointment requirement is burdensome is meritless and belied by a review of what is required to actually 'register.'"[122]  According to Defendants,

> This registration consists of appointing a person (who does not have to be a lawyer, accountant or any other professional) as a treasurer of the committee; this requirement (and any attendant disclosure requirements) is triggered only if the committee expends or contributes more than $500.  Depending on whether a committee is required to register as a specific- or general-purpose committee, this registration process requires completion of a simple 2 or 3 page form available on [the Texas Ethics Commission]'s website.  [The Texas Ethics Commission] charges no fee to file the treasurer appointment and any person, regardless of whether they are a lawyer or lay person, can complete and submit the form.[123]

Defendants argue that the testimony of Plaintiffs' witness "regarding what he personally charges sophisticated political committees as a 'set up' charge . . . is no evidence of a burden caused by the Texas registration requirement."[124]  Defendants point

---

[121]Second Amended Complaint, Docket Entry No. 36, p. 30 ¶ 10.44.  Plaintiffs suggest that the $500 threshold is especially low when most of a committee's political contributions will be in the form of in-kind contributions.  See Plaintiffs' Reply, Docket Entry No. 61, p. 19.

[122]Defendants' Motion for Summary Judgment, Docket Entry No. 52, p. 31.

[123]Id. at 31-32.

[124]Id. at 32 n.20.

out that much of the testimony "concerned costs and burdens associated with the federal tax consequences associated with acting as a political committee."[125]

Drawing all reasonable inferences in favor of Plaintiffs, the court is not persuaded that the requirements are so burdensome as to fail constitutional scrutiny. First, "disclosure thresholds, like contribution limits, are inherently inexact; courts therefore owe substantial deference to legislative judgments fixing these amounts." Family PAC, 685 F.3d at 811; see also Worley, 717 F.3d at 1251 ("Supreme Court and Circuit precedent has 'consistently upheld organizational and reporting requirements against facial challenges,' in part because crafting such disclosure schemes is better left to the legislature." (quoting SpeechNow.org, 599 F.3d at 696)).

"In Buckley, the Supreme Court upheld a disclosure threshold after observing that it was not 'wholly without rationality.'" Vermont Right to Life, 758 F.3d at 138-39 (quoting Buckley, 96 S. Ct. at 665). The challenged statutory provisions in Buckley required that records "be kept by political committees of the names and addresses of those who make contributions in excess of $10" and that "[i]f a person's contributions to a committee or candidate aggregate more than $100, his name and address, as well as his occupation and principal place of business, [were] to be included

---

[125]Id.; see also Transcript of Injunction Hearing, Docket Entry No. 26, pp. 38-64 (testimony of Chris Gober).

in reports filed by committees and candidates with the Commission
and made available for public inspection." 96 S. Ct. at 665
(citations omitted). The appellants in Buckley contended "that the
monetary thresholds in the record-keeping and reporting provisions
lack[ed] a substantial nexus with the claimed governmental
interests, for the amounts involved [were] too low even to attract
the attention of the candidate, much less have a corrupting
influence." Id. The Court upheld the challenged provisions:

> The $10 and $100 thresholds are indeed low. Contributors
> of relatively small amounts are likely to be especially
> sensitive to recording or disclosure of their political
> preferences. These strict requirements may well
> discourage participation by some citizens in the
> political process, a result that Congress hardly could
> have intended. Indeed, there is little in the
> legislative history to indicate that Congress focused
> carefully on the appropriate level at which to require
> recording and disclosure. Rather, it seems merely to
> have adopted the thresholds existing in similar
> disclosure laws since 1910. But we cannot require
> Congress to establish that it has chosen the highest
> reasonable threshold. The line is necessarily a
> judgmental decision, best left in the context of this
> complex legislation to congressional discretion. We
> cannot say, on this bare record, that the limits
> designated are wholly without rationality.

Id.; see also Nat'l Org. for Marriage v. McKee, 649 F.3d 34, 60
(1st Cir. 2011) ("Following Buckley, we have granted judicial
deference to plausible legislative judgments as to the appropriate
location of a reporting threshold, and have upheld such legislative
determinations unless they are wholly without rationality."
(quoting Vote Choice, Inc. v. DiStefano, 4 F.3d 26, 33 (1st Cir.
1993)) (internal quotation marks omitted)); Canyon Ferry Rd.

Baptist Church of E. Helena, 556 F.3d at 1031-34 (applying the
"wholly without rationality" standard of deference to determine
whether a threshold reporting requirement was substantially related
to the State's informational interest in "providing its citizenry
with information about the constituencies supporting and opposing
ballot issues").

In light of the considerable deference afforded to legislative
judgments in setting disclosure thresholds, and the fact that
several courts have upheld similar thresholds, the court does not
conclude that Texas's $500 treasurer-appointment and political
committee disclosure requirements are wholly without rationality.
Cf. Buckley, 96 S. Ct. at 665-66; Vermont Right to Life, 758 F.3d at
137-39; Worley, 717 F.3d at 1249-53; Family PAC, 685 F.3d at
808-11; Nat'l Org. for Marriage, 649 F.3d at 59-61.

Moreover, even without applying the wholly without rationality
standard of deference, Plaintiffs' as-applied challenge to Texas's
treasurer-appointment and political committee disclosure require-
ment fails.  Cf. Worley, 717 F.3d at 1240, 1249-53 (holding that
Florida's political committee disclosure requirements applicable to
political committees consisting of "two or more individuals who
accept contributions of -- or spend -- more than $500 in a year to
expressly advocate the election or defeat of a candidate or the
passage or defeat of a ballot issue" survived exacting scrutiny,
but "nevertheless find[ing] the discussion in [McKee] assessing
disclosure thresholds [under the wholly without rationality

standard] to be instructive" (analyzing <u>Nat'l Org. for Marriage</u>, 649 F.3d at 60)); <u>Justice</u>, 2013 WL 5462572, at *8-13 (suggesting that exacting scrutiny demands more than the deferential wholly without rationality standard).

The Fifth Circuit has observed that "Texas has excerpted small-scale general-purpose committee political activity from its registration requirements." <u>Catholic Leadership</u>, 2014 WL 3930139, at *24. Here, although presented as a challenge "as applied to groups with minimal financial activity," Plaintiffs have not limited the scope of their proposed activities and instead have consistently alleged that they intend to engage in additional recall elections[126] as well as "other measures-only efforts."[127] <u>Cf.</u> <u>Worley</u>, 717 F.3d at 1252 ("Here, Challengers openly acknowledge they seek to raise more money in the future."). Moreover, Plaintiffs specifically allege that "they plan to engage in

---

[126]Plaintiffs' Motion for Summary Judgment, Docket Entry No. 53, p. 11 ("Plaintiffs intend to engage in recalls in the future as well, as these issues are sure to arise in additional cities and even with respect to new officials who may take office in San Antonio later."); Joint Heirs' Interrogatory Responses, attached to Plaintiffs' Motion for Summary Judgment, Docket Entry No. 53-19, p. 1; Houston's First Interrogatory Responses, attached to Plaintiffs' Motion for Summary Judgment, Docket Entry No. 53-20, p. 1; Faith Outreach International's Interrogatory Responses, attached to Plaintiffs' Motion for Summary Judgment, Docket Entry No. 53-21, p. 1.

[127]Second Amended Complaint, Docket Entry No. 36, pp. 11-16 ¶¶ 5.1-5.3; <u>see also</u> Plaintiffs' First Amended Reply, Docket Entry No. 9-1, p. 15 ("An injunction is also needed to protect Plaintiffs who seek to circulate recall petitions in the future and engage in measures-only issues (that are not coordinated with a candidate or political committee that coordinates with candidates).").

activity implicating a value easily in excess of" $500.[128]  In their
Reply, Plaintiffs estimate that their proposed activity in
connection with the San Antonio recall efforts may exceed
$1,148.48.[129]  Cf. Canyon Ferry Rd. Baptist Church of E. Helena, 556
F.3d at 1029 (holding Montana's "'zero dollar' threshold for
disclosure" unconstitutional under the wholly without rationality
standard as applied to an incorporated church's "de minimis in-kind
expenditures," which consisted merely of allowing a church member
to photocopy a few dozen petitions on the Church's copy machine
using her own paper, placing petitions in the Church's foyer, and
a pastor's "exhortation to sign the . . . petition during a
regularly scheduled sermon").

Because Plaintiffs have expressed an intention to engage in
recurring, and perhaps even ongoing, political activity that they
acknowledge will entail substantial in-kind political
contributions, the court concludes that Plaintiffs' as-applied
challenge fails even without applying the wholly without
rationality standard of deference to Texas's $500 disclosure

---

[128]Plaintiffs' Reply, Docket Entry No. 61, p. 19.

[129]See id. ("Estimating a cost of ten cents per page, simply
printing 5,000 pages for recall petitions, flyers, schedules, etc.,
will cost $500."); id. n.8 ("A single vehicle traveling 386 miles
(round trip) from Houston's First Church of God to San Antonio City
Hall as part of a coordinated effort with Plaintiffs would result
in a $216.16 in-kind contribution to Plaintiffs' de facto
committee, based on the IRS's standard mileage reimbursement rate
for 2014 (56 cents per mile).  The use of three vehicles would
amount to a $648.48 contribution."  (citation omitted)).

threshold.   Considering the relative burden of compliance, the court further concludes that Texas's treasurer-appointment and political committee disclosure requirements are substantially related to Texas's informational interests.  Plaintiffs' challenges to §§ 252.001 and 253.031(b), and their challenge to § 251.001(12)'s definition of "political committee" based on the alleged burdens imposed by §§ 252.001 and 253.031(b), therefore fail as a matter of law.

**E.   Plaintiffs' Challenge to § 251.001(2)**

Section 251.001(2) defines "contribution" to mean

a direct or indirect transfer of money, goods, services, or any other thing of value and includes an agreement made or other obligation incurred, whether legally enforceable or not, to make a transfer.   The term includes a loan or extension of credit, other than those expressly excluded by this subdivision, and a guarantee of a loan or extension of credit, including a loan described by this subdivision.   The term does not include:

(A) a loan made in the due course of business by a corporation that is legally engaged in the business of lending money and that has conducted the business continuously for more than one year before the loan is made; or

(B) an expenditure required to be reported under Section 305.006(b), Government Code.

Tex. Elec. Code Ann. § 251.001(2) (West 2012).   The court has already concluded that Plaintiffs have standing to challenge § 253.031(b), which incorporates § 251.001(2)'s "contribution" definition to trigger Texas's treasurer-appointment requirement. Because § 253.031(b) requires a political committee to appoint a

treasurer before it "accept[s] political contributions totaling more than $500," and the term "political contribution" incorporates § 251.001(2)'s definition of "contribution," the court concludes that Plaintiffs have established standing to challenge § 251.001(2).

Plaintiffs allege that § 251.001(2) "is unconstitutionally vague and overbroad."[130]   "In the First Amendment context, the doctrines of vagueness and overbreadth overlap; both are premised on concerns about chilling constitutionally protected speech." Wisconsin Right To Life, Inc. v. Barland, 751 F.3d 804, 835 (7th Cir. 2014); see also Kolender v. Lawson, 103 S. Ct. 1855, 1859 n.8 (1983) ("[W]e have traditionally viewed vagueness and overbreadth as logically related and similar doctrines."); Ctr. for Individual

---

[130]Second Amended Complaint, Docket Entry No. 36, p. 37; see also id. at 9 ¶¶ 4.3-4.4, 32-33 ¶¶ 10.55-10.65.  Plaintiffs also ask the court to "enjoin[] the Defendants from enforcing" § 251.001(6) "in such a way as to violate Plaintiffs' constitutional right to circulate or submit recall petitions, encourage others to do the same, and from otherwise making a political contribution concerning a recall effort or measures-only effort." Id. at 36; see also id. at 18 ¶ 6.12, 29 ¶ 10.39. Section 251.001(6) defines "expenditure" as "a payment of money or any other thing of value and includes an agreement made or other obligation incurred, whether legally enforceable or not, to make a payment." Tex. Elec. Code Ann. § 251.001 (West 2012). Plaintiffs make no argument, however, that § 251.001(6)'s definition of "expenditure" is vague, overbroad, or operates to prohibit any of their proposed political activity. Plaintiffs' argument regarding § 251.001(6) appears to be focused on the perceived burdens of complying with Texas's treasurer-appointment and political committee disclosure requirements, which are addressed in § IV.D above.  See Second Amended Complaint, Docket Entry No. 36, pp. 29-31 ¶¶ 10.35-10.54; Plaintiffs' Motion for Summary Judgment, Docket Entry No. 53, pp. 40-43; Plaintiffs' Reply, Docket Entry No. 61, pp. 19-23.

<u>Freedom v. Madigan</u>, 697 F.3d 464, 479-80 (7th Cir. 2012) ("In the
First Amendment context, vagueness and overbreadth are two sides of
the same coin, and the two sorts of challenges are often conceived
of as 'alternative and often overlapping' theories for relief on
the same claim." (quoting <u>Jordan v. Pugh</u>, 425 F.3d 820, 827 (10th
Cir. 2005)).  Normally,

> [i]n a facial challenge to the overbreadth and vagueness
> of a law, a court's first task is to determine whether
> the enactment reaches a substantial amount of
> constitutionally protected conduct.  If it does not, then
> the overbreadth challenge must fail.  The court should
> then examine the facial vagueness challenge and, assuming
> the enactment implicates no constitutionally protected
> conduct, should uphold the challenge only if the
> enactment is impermissibly vague in all of its
> applications.  A plaintiff who engages in some conduct
> that is clearly proscribed cannot complain of the
> vagueness of the law as applied to the conduct of others.
> A court should therefore examine the complainant's
> conduct before analyzing other hypothetical applications
> of the law.

<u>Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.</u>, 102
S. Ct. 1186, 1191 (1982); <u>see also</u> <u>United States v. Clark</u>, 582 F.3d
607, 612 (5th Cir. 2009).  "But campaign-finance laws operate in a
core free-speech zone and <u>directly</u> target protected speech."
<u>Wisconsin Right To Life</u>, 751 F.3d at 836.  "In this context, we
don't need to ask whether the challenged law reaches a substantial
amount of protected speech; by definition, it does, because all
political speech is protected."  <u>Id.</u>  Accordingly, alleged
overbreadth in the campaign-finance context is a "more-focused
inquiry," because the "'government may regulate in th[is] area only

with narrow specificity.'" Id. (quoting Buckley, 96 S. Ct. at 645 n.48).

"The first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." United States v. Williams, 128 S. Ct. 1830, 1838 (2008).  As noted by Defendants, the definition of "contribution" in § 251.001 does not prohibit, limit, or regulate Plaintiffs' proposed conduct.[131] Like the definition of "political committee," it "is simply a

---

[131]Defendants argue that "it is entirely unclear what injury Plaintiffs even seek to redress through their attempt to enjoin the statutory definition of 'contribution,' such that it is unclear whether Plaintiffs even have standing to make such a claim." Defendants' Response, Docket Entry No. 58, p. 16 n.8.  According to Defendants,

> It should be readily apparent that a statutory definition does not and cannot, in and of itself, prohibit activity or cause any injury.  Rather, it is only statutes that contain the term 'contribution' that could be seen as actually imposing any possible injury on Plaintiffs.  As such, it is unclear what, if anything, would be accomplished or redressed by simply enjoining the statutory definition challenged by Plaintiffs.  For example, if the statutory definition was declared invalid, rules of construction would require that statutes containing the term 'contribution' would be construed based on the common usage of the term.  Given this, it is unclear how a declaration that a statutory definition is invalid would redress any of Plaintiffs' claimed injuries.

Id. (citations omitted) (citing Tex. Gov't Code Ann. § 311.011(a) (West 2013)).  Nevertheless, since Plaintiffs challenge the definition of "contribution" as it is utilized in particular conduct-regulating provisions of the Texas Election Code, the court will address the merits of Plaintiffs' arguments in the context of those provisions.

useful drafting tool" that "sets out the domain of a series of separate statutory provisions." <u>Vermont Right to Life</u>, 758 F.3d at 137. The court will therefore look to the conduct-regulating statutes challenged by Plaintiffs to determine the scope of § 251.001(2)'s definition of the term "contribution."

Of the conduct-regulating statutes challenged by Plaintiffs that utilize § 251.001(2)'s "contribution" definition, § 253.094 and § 253.031 regulate "political contributions," while § 253.096 regulates "campaign contributions."[132] In each instance, the term "contribution" is narrowed by a consideration of the nature of the recipient and the intent of the contributor. <u>See</u> Tex. Elec. Code Ann. §§ 251.001(3), 251.001(5) (West 2012); <u>see also</u> <u>Hoyt</u>, 878 F. Supp. 2d at 735 n.16 ("[B]oth campaign contributions and campaign expenditures are characterized by a payment or transfer of money or other thing of value with campaign contributions being distinguished by (1) the nature of the recipient (a candidate or political committee), and (2) the contributor's intent that the recipient of the contribution use it in connection with an election (as opposed to its simply being made 'in connection with an election')" (quoting <u>Ex parte Ellis</u>, 279 S.W.3d 1, 8 (Tex. App.—Austin 2008), <u>aff'd</u>, 309 S.W.3d 71 (Tex. Crim. App. 2010))).

---

[132]<u>See</u> Defendants' Motion for Summary Judgment, Docket Entry No. 52, p. 37 ("Plaintiffs' vagueness challenge to the § 251.001(2) definition of 'contribution' is unfounded because it is based on Plaintiffs ignoring the fact that the statu[t]es that serve to regulate conduct, such as § 253.094, do not prohibit simply 'contributions,' but rather use the term '<u>political</u> contributions,' which is given a specific definition in the Election Code.").

Thus, although Plaintiffs allege that the conduct-regulating statutes that they challenge "reach[] all expressive activity of Plaintiffs and parties not before the Court that encourages people to sign or otherwise support recall petitions,"[133] in fact, these statutes reach only those activities that (1) constitute a transfer (2) of a thing of value (3) to a candidate or political committee (4) given with the requisite intent that the recipient use it in connection with a recall election.[134]   See Tex. Elec. Code Ann. §§ 251.001(3), (5), 253.031(b), 253.096 (West 2012), § 253.094 (West Supp. 2014).   Courts have found that knowledge or intent requirements reduce the potential for vagueness.   See, e.g., Holder v. Humanitarian Law Project, 130 S. Ct. 2705, 2720 (2010) ("[T]he knowledge requirement of the statute further reduces any potential for vagueness, as we have held with respect to other statutes containing a similar requirement."); Ex parte Ellis, 309 S.W.3d 71 (Tex. Crim. App. 2010) ("The Election Code provisions at issue require that a contributor have a certain intent before the contribution is deemed illegal, and it requires that a recipient know that a contribution is in fact illegal, which entails knowing

---

[133]Second Amended Complaint, Docket Entry No. 36, p. 33 ¶ 10.65.

[134]Defendants argue that Plaintiffs' claim "that the term ['contribution'] operates to prohibit 'all expressive activity of Plaintiffs,' . . . is simply incorrect because . . . a church's independent use of its own funds or resources in support of election activity (including recalls) would constitute a 'direct campaign expenditure' that is not barred by § 253.094(b)." Defendants' Motion for Summary Judgment, Docket Entry No. 52, p. 30.

the intent of the contributor, before imposing criminal liability. The State has the burden to prove the applicable culpable mental states, and if it cannot, then a defendant charged under these provisions is entitled to an acquittal.").

The thrust of Plaintiffs' challenge to § 251.001(2) is their argument that the statute is overbroad because the phrase "indirect transfer of . . . any other thing of value" is vague, and Plaintiffs cannot determine whether their proposed conduct would constitute a prohibited political or campaign contribution.[135] "Vagueness doctrine is an outgrowth not of the First Amendment, but of the Due Process Clause of the Fifth Amendment." Williams, 128 S. Ct. at 1845. "The Due Process Clause requires that a law provide sufficient guidance such that a man of ordinary intelligence would understand what conduct is being prohibited." Munn v. City of Ocean Springs, Miss., No. 13-60806, 2014 WL 4066202, at *2 (5th Cir. Aug. 18, 2014) (citing Williams, 128 S. Ct. at 1845). However, the court's vagueness analysis "cannot focus upon the marginal cases in which an ordinarily plain statutory command can nonetheless yield some mote of uncertainty." Texas Med. Providers Performing Abortion Servs. v. Lakey, 667 F.3d 570, 580 (5th Cir. 2012). "[S]peculation about possible vagueness in hypothetical situations not before the [c]ourt will not support a facial attack on a statute when it is surely valid in the vast

---

[135]See Second Amended Complaint, Docket Entry No. 36, pp. 32-33 ¶¶ 10.55-10.65.

majority of its intended applications." Id. (quoting Hill v. Colorado, 120 S. Ct. 2480, 2498 (2000) (internal quotation marks omitted)).

Plaintiffs argue that "[n]o one can be certain what an 'indirect transfer of money' is or how far it might reach."[136] Pointing to the Texas court of appeals' opinion in Cook, Plaintiffs allege that "[t]he phrase [indirect transfer of money] has been held to include postings of speech on corporate websites, even when nothing of value was transferred from the corporation to a recall committee.[137] Plaintiffs base their characterization of the Cook court's holding on the following language in its opinion:

> The Election Code does not define goods, services, or "thing of value." It is clear that [Word of Life Church ("WOL Church")], as a corporation, through the use of its website, promoted the circulation of recall petitions, created a portal whereby volunteers could register through WOL Church to circulate petitions, provided the

---

[136]Id. at 32 ¶ 10.61.

[137]Second Amended Complaint, Docket Entry No. 36, p. 32 ¶ 10.62; see also id. ¶ 10.60 ("By defining 'contribution' as including an 'indirect transfer of money,' Texas has created a situation in which the posting of speech in support of a recall petition on a corporation's website (i.e. an incorporated church's website) without doing it through a recall committee, has been found to be an impermissible 'contribution.'" (citing Cook, 385 S.W.3d at 602–03)). Although Plaintiffs use the phrase "indirect transfer of money" in their Second Amended Complaint, their allegations focus on the regulation of in-kind contributions. See 1 Tex. Admin. Code § 20.1(8) (defining in-kind contribution to mean "[a] contribution of goods, services, or any other thing of value, except money, and includes an agreement made or other obligation incurred, whether legally enforceable or not, to make such a contribution. The term does not include a direct campaign expenditure.").

facility and personnel to assist in the signing and
circulation of the recall petitions, and notified the
public that recall petitions were available for signing
at WOL Church.  The evidence establishes that WOL Church
made campaign contributions from its own property in
connection with a measure-only recall election without
properly making the contributions to a measure-only
committee, Tex. Elec. Code Ann. § 253.096 (West 2010),
and that WOL Church, a corporation, made a political
contribution in connection with a recall election,
including the circulation and submission of petitions to
call an election, and failed to make such contribution to
a political committee in violation of Sections 253.096
and 253.094(b) of the Election Code. Tex. Elec. Code Ann.
§§ 253.096 (West 2010), 253.094(b) (West Supp. 2011).

<u>Cook</u>, 385 S.W.3d at 603.[138]  Plaintiffs appear to argue that the

<u>Cook</u> court held "postings of speech on corporate websites" to be a

---

[138]It is unclear what the court in <u>Cook</u> meant when it stated
that "WOL Church, a corporation, made a political contribution in
connection with a recall election, including the circulation and
submission of petitions to call an election, and failed to make
such contribution to a political committee."  385 S.W.3d at 603.
The opinion makes no mention of any candidates and, therefore, in
order for any "contribution" to represent a "political
contribution" it would have to have been made to a political
committee.  Plaintiffs appear to argue that the <u>Cook</u> court
interpreted the language of § 253.094(b) to define "the circulation
and submission of a petition to call an election" as a "political
contribution" regardless of the recipient or the intent of the
contributor in making the contribution.  Defendants contend that
the cited language "constitutes a misinterpretation of
§ 253.094(b)."  Defendants' Motion for Summary Judgment, Docket
Entry No. 52, p. 18.  "The misinterpretation of § 253.094(b) in
<u>Cook</u> can be contrasted with a more proper reading of the statutory
scheme" in <u>Hoyt</u>, where the court held that § 253.094(b) "only
prohibits the circulation of recall petitions when such circulation
constitutes a political contribution."  <u>Id.</u> at 18-19 (quoting <u>Hoyt</u>,
878 F. Supp. 2d at 736).  The court agrees with the <u>Hoyt</u> court's
interpretation of § 253.094(b).  Accordingly, in analyzing
Plaintiffs' claims, the court construes the circulation and
submission of recall petitions as a "political contribution" only
when that activity constitutes a transfer of a thing of value to a
political committee with the intent that it be used on a measure.
<u>See</u> Tex. Elec. Code §§ 251.001(3), (5) (West 2012), § 253.094(b)
(West Supp. 2014).

"contribution" despite the fact that they have no value,[139] and that it is impossible to determine when such a posting constitutes an "indirect transfer" to a political committee.[140]

The documents produced by Plaintiffs reflect that the parties in Cook were specifically concerned with the value derived from use of the incorporated church's website.  In Cook the mayor of El Paso alleged that WOL Church, a corporation, coordinated with other churches and an already existing political committee to promote a

_____

[139]Second Amended Complaint, Docket Entry No. 36, p. 9 ¶ 4.4 ("The phrase 'any other thing of value' is not defined in the statute but has been interpreted broadly in Cook v. Tom Brown Ministries to include speech occurring on an incorporated church's website or in its facilities if such speech promotes the circulation of a recall petition." (citation omitted)); id. at 17 ¶ 6.3 ("The Texas court in Cook interpreted the term 'contribution,' under § 251.001(2), to include a Church expressively encouraging -- by speech on its website -- its parishioners to get involved in supporting recall petitions." (citation omitted)).  The "thing of value" language is also used in the definition of "contribution" under federal law.  See 52 U.S.C. § 30101(8)(A) (2014) (formerly codified at 2 U.S.C. § 431(8)(A)) ("The term 'contribution' includes . . . any gift, subscription, loan, advance, or deposit of money or anything of value made by any person for the purpose of influencing any election for Federal office . . . .").  Plaintiffs have not cited any vagueness or overbreadth challenges to this language as used in federal campaign finance law.

[140]Second Amended Complaint, Docket Entry No. 36, p. 32 ¶ 10.62; see also id. ¶ 10.60.  Because Plaintiffs' arguments are specifically addressed at § 251.001(2)'s definition of "contribution," rather than the more restrictive definitions of "political contribution" or "campaign contribution," it is unclear whether their critique of Cook's holding is premised on its statement that WOL Church "made a political contribution in connection with a recall election . . . and failed to make such contribution to a political committee."

recall election.[141]  The political committee was "El Pasoans for Traditional Family Values (EPTFV)," "a specific-purpose political committee . . . created for the specific purpose of supporting a measure described as 'traditional family values' to be decided by election on November 2, 2010." Cook, 385 S.W.3d at 594.  The proposed measure, Ordinance Number 016456, passed. Id.  In July of 2011 the El Paso City Council effectively reversed Ordinance Number 017456 by amendment. Id. at 595.  An effort to recall the mayor and certain members of the city council was organized in response. See id.

Thereafter, in a posting on WOL Church's website, the pastor of WOL Church "stated that he and EPTFV, the specific-purpose committee, had decided to join in the recall efforts" although EPTFV had not filed any forms "to 'repurpose' the committee. . . for the purpose of supporting a measure to recall officeholders."[142] Id.  The WOL Church website was also used to "promote[] the

---

[141]See Plaintiff's Third Amended Petition, Application for Temporary Restraining Order, Request for Temporary Injunction and Permanent Injunction, and for Declaratory Judgment ("Cook Complaint"), attached to Plaintiffs' Motion for Leave to File Amended Reply, Docket Entry No. 9-9, pp. 4-9 ¶¶ 5-12, pp. 12-13 ¶¶ 22-25; see also Cook, 385 S.W.3d at 602-03.

[142]See also Brief of Appellant John F. Cook, attached to Plaintiffs' Motion for Leave to File Amended Reply, Docket Entry No. 9-10, p. 19 ("In a June posting [to the incorporated church's website] entitled, 'A Message from Pastor Tom Brown,' Pastor Brown called for a recall petition campaign and stated that '[i]t was not an easy decision to recall the mayor. . . . I, along with El Pasoans for Traditional Family Values (EPTFV), have decided to join in the recall of Mayor John Cook, and help in any way we can to recall Steve Ortega and Susie Byrd.'").

circulation of recall petitions, create[] a portal whereby
volunteers could register through WOL Church to circulate
petitions, provide[] the facility and personnel to assist in the
signing and circulation of the recall petitions, and notif[y] the
public that recall petitions were available for signing at WOL
Church." Id. at 603.  The mayor alleged that "WOL Church . . .
furnished or transferred to the recall effort the value of updated
websites, social media, furnished facilities and premises for
circulation of petitions, meetings, copies of petitions, and other
things of value," and contended that "[a]lthough the exact cost of
such 'things of value' will be better known in discovery, they are
not insubstantial."[143]

Based on the limited facts before the court it appears that
the parties and the court in Cook were concerned with the value
that WOL Church provided through the use of its corporate website.
The court cannot conclude, as Plaintiffs apparently contend, that
"postings of speech on corporate websites" can never constitute a
thing of value.  Nor can the court conclude that it is impossible
to determine whether particular postings constitute an indirect
transfer of a thing of value to a political committee.  Indeed,

---

[143]Cook Complaint, attached to Plaintiffs' Motion for Leave to
File Amended Reply, Docket Entry No. 9-9, p. 19 ¶ 39; see also id.
at 12 ¶ 23 ("WOL Church/TBM provided the value of the website and
its updates, the advertising, the value of the church premises and
facilities for circulating petitions, meetings, and distribution of
petitions, along with providing copies of petitions to recall all
three objects of the effort.").

when a corporation coordinates with a political committee, use of
the corporation's website either by or for the committee means that
the committee may forego the cost of establishing and maintaining
its own website.[144]

As noted by Defendants, absent coordination with a political
committee, however, promotion of recall efforts on a church's
website does not constitute a political contribution.[145]  See Hoyt,
878 F. Supp. 2d at 735.  As the Supreme Court explained in the
context of in-kind contributions to candidates,

> The expenditure of resources at the candidate's direction
> for a fundraising event at a volunteer's residence or the
> provision of in-kind assistance in the form of food or
> beverages to be resold to raise funds or consumed by the
> participants in such an event provides material financial
> assistance to a candidate.  The ultimate effect is the
> same as if the person had contributed the dollar amount
> to the candidate and the candidate had then used the
> contribution to pay for the fundraising event or the
> food.  Similarly, travel undertaken as a volunteer at the

---

[144]Indeed, Plaintiffs appear to acknowledge that website design
and maintenance often entails some cost.  See Joint Heirs'
Interrogatory Responses, attached to Plaintiffs' Motion for Summary
Judgment, Docket Entry No. 53-19, p. 4 ("[W]e also want to ask
. . . interested individuals, whether members of the church or not,
to pay for certain items in furtherance of recall efforts, which
could range from things like, among other things, paper and toner
(for printing petitions, research, communications, etc.) to
payments for professional design of a dedicated recall advocacy
website, payments for online announcements and information
. . . ."); see also Houston's First Interrogatory Responses,
attached to Plaintiffs' Motion for Summary Judgment, Docket Entry
No. 53-20, p. 4; Faith Outreach International's Interrogatory
Responses, attached to Plaintiffs' Motion for Summary Judgment,
Docket Entry No. 53-21, p. 4.

[145]Defendants' Motion for Summary Judgment, Docket Entry
No. 52, p. 18.

> direction of the candidate or his staff is an expense of
> the campaign and may properly be viewed as a contribution
> if the volunteer absorbs the fare. Treating these
> expenses as contributions when made to the candidate's
> campaign or at the direction of the candidate or his
> staff forecloses an avenue of abuse without limiting
> actions voluntarily undertaken by citizens independently
> of a candidate's campaign.

Buckley, 96 S. Ct. at 643. Similarly, the hallmark for determining

whether a particular activity constitutes an indirect transfer to

a political committee is coordination with that committee. Cf.

Tex. Ethics Comm'n, Ethics Advisory Op. No. 503 (2012) ("Whether

the expenditure constitutes a prohibited contribution depends on

whether the expenditure is made with the prior consent or approval

of the candidate. An expenditure that is not made with the prior

consent and approval of the candidate is not a campaign

contribution to the candidate."). Whether any particular posting

constitutes a transfer of a thing of value to a political committee

necessarily depends on the specific facts. Cf. id. ("It is a fact

question whether any particular expenditure is made with the prior

consent or approval of a candidate.").

Plaintiffs have not identified how their proposed political

committee would be similar to or different from the specific-

purpose committee in Cook. Nor have they identified the substance

of their intended "posting of information on [their] websites"

beyond their intention to "[p]romot[e] recall efforts."[146]

---

[146]Second Amended Complaint, Docket Entry No. 36, pp. 11-12
¶ 5.1(d), p. 13 ¶ 5.2(d), p. 14 ¶ 5.3(d).

Moreover, Plaintiffs acknowledge that much of their proposed activity has a readily determinable fair-market value.[147]   Cf. Catholic Leadership, 2014 WL 3930139, at *25 (noting in the context of "an in-kind donation of an email mailing list" that "email mailing lists, and the email addresses that comprise them, have actual monetary value and can be sold"); Tex. Ethics Comm'n, Ethics Advisory Op. No. 262 (1995) (discussing whether a signature on a petition constitutes a thing of value and concluding that "[a] signature on a candidate's petition for a place on the ballot does not, by itself, constitute a transfer of a thing of value to the candidate and is not a political contribution" but that "any goods or services that are used or provided to obtain a signature on a candidate's petition, such as paper or personal services, would constitute a political contribution to the candidate").

For these reasons the court concludes that persons of ordinary intelligence can understand whether their activities constitute a "thing of value" in the particular circumstances and whether they might, through coordination with a political committee, make an indirect transfer with the specific intent that it be used in connection with a recall.

Plaintiffs further attempt to illustrate § 251.001(2)'s alleged vagueness through a litany of hypothetical questions:

---

[147]Plaintiffs' Reply, Docket Entry No. 61, p. 19.

> Does an "indirect transfer" include a speech given by a
> corporation's chief executive officer? Does it include
> a speech given by a corporation's employee? Does it
> reach a notice posted on a bulletin board in a
> corporation's break room that encourages employees to
> support or oppose a recall effort? Does it matter who
> authored the notice? Does it matter whether the
> corporation gave permission for the notice to be posted?
> No one knows, because while a "direct" transfer has an
> obvious meaning, the meaning of "indirect" transfer is
> unknown.[148]

However, "[s]peculation about possible vagueness in hypothetical

situations not before the [c]ourt will not support a facial attack

on a statute when it is surely valid in the vast majority of its

intended applications." Texas Med. Providers, 667 F.3d at 580

(quoting Hill, 120 S. Ct. at 2498 (internal quotation marks

omitted)). "Indeed, hypothetical situations, speculation, and

theoretical possibilities are 'of no due process significance'

unless they ripen into prosecution." Magee v. City of S. Padre

Island, 463 F. App'x 377, 379-80 (5th Cir. 2012) (quoting Village

of Hoffman Estates, 102 S. Ct. at 1196 n.21).

Because the conduct-regulating statutes challenged by

Plaintiffs only regulate (1) transfers (2) of a thing of value

(3) to candidates or political committees (4) made with the

specific intent that the recipient use it in connection with a

recall, and because a person of ordinary intelligence can generally

---

[148]Second Amended Complaint, Docket Entry No. 36, p. 32
¶ 10.62.

understand whether they are making an indirect transfer to a political committee by examining whether they coordinated with that committee with regard to a particular activity, the court concludes that § 251.001(2)'s definition of "contribution" is neither vague nor overbroad.

### V.  Conclusions and Order

For the reasons explained in §§ IV.A, B, and C above, the court concludes that Plaintiffs have failed to meet their burden to establish standing to challenge §§ 253.094(b), 253.096, or 253.094(a).  Plaintiffs challenges to §§ 253.094(b), 253.096, and 253.094(a) are therefore **DISMISSED** for lack of subject matter jurisdiction.

For the reasons explained in § IV.D and E above, the court concludes that Plaintiffs' challenges to §§ 251.001(12), 252.001, 253.031(b), 251.001(2), and 251.001(6) fail as a matter of law. Defendants are therefore entitled to summary judgment on those claims.

Accordingly, Defendants' Motion for Summary Judgment (Docket Entry No. 52) is **GRANTED IN PART**, Plaintiffs' Motion for Summary Judgment (Docket Entry No. 53) is **DENIED**, and Plaintiffs' Motion

for Temporary Restraining Order and Expedited Preliminary Injunctive Relief (Docket Entry No. 2) is **DENIED**.[149]

**SIGNED** at Houston, Texas, on this 9th day of September, 2014.

_____

SIM LAKE
UNITED STATES DISTRICT JUDGE

---

[149]The court has allowed the parties extraordinary leeway in submitting lengthy briefs and other written materials in connection with the pending motions and has twice allowed the Plaintiffs to amend their complaint.  As the length of this Memorandum Opinion and Order indicates, the court has expended considerable time reading these papers and performing a significant amount of independent research to be as fully informed as possible when addressing the parties' arguments.  While, because of the sheer volume of information presented, it is not impossible that some arguments were overlooked, the parties should assume that failure to expressly address a particular argument in this Memorandum Opinion and Order reflects the court's judgment that the argument lacked sufficient merit to warrant discussion.  Accordingly, the court strongly discourages the parties from seeking reconsideration based on arguments they have previously raised or that they could have raised.  In addition, Plaintiffs have already had multiple opportunities to amend their pleadings.